**COUNTY OF BUTLER**

v.

**LOCAL 585, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, and Local 2640, American Federation of State, County, and Municipal Employees**

v.

**Buckingham Security, Ltd. and Adcare Corporation and County of Butler**

v.

**Buckingham Security, Ltd. and Adcare Corporation**

**Buckingham Security, Ltd. and Adcare Corporation, Appellants.**

**County of Butler**

v.

**Local 585, Service Employees International Union, AFL–CIO, and Local 2640, American Federation of State, County, and Municipal Employees**

v.

**Buckingham Security, Ltd. and Adcare Corporation and County of Butler**

v.

**Buckingham Security, Ltd. and Adcare Corporation.**

**County of Butler, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1999.
Decided Oct. 7, 1999.
Reargument Denied Dec. 8, 1999.

Allen E. Ertel, Williamsport, for appellants.

Richard DiSalle, Pittsburgh, for appellee, County of Butler.

Before COLINS, President Judge, and McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J. and LEADBETTER, J.

FLAHERTY, Judge.

Buckingham Security Ltd. and Adcare Corporation (collectively, Buckingham) appeal from the denial of the Motion for Judgment and the County of Butler (County) cross-appeals from an order of the Court of Common Pleas of Butler County (trial court) which granted the summary judgment motion of the County. We affirm.

In 1985, the Butler County Board of Commissioners purchased a building located in Butler, Pennsylvania, to use as a minimum security facility for the rehabilitation of County inmates to be known as the "Washington Center". The Commissioners decided to offer its operation to private companies by accepting bids for the contract. Buckingham was the successful bidder and on July 30, 1987 the County and Buckingham entered into a three-year contract giving Buckingham a lease to manage and operate the facility for the County.[1]

After a newly elected Board of Commissioners took office in January of 1988, the Board instructed the County's solicitor to seek a declaratory judgment of the contract. The contract had an arbitration clause and pursuant to this clause, on January 28, 1988, Buckingham filed a demand for arbitration with the American Arbitration Association.[2] Subsequently, on February 8, 1988, the County filed a complaint for declaratory judgment to determine the validity of the contract and it also filed an action in equity to enjoin the arbitration of the dispute on the grounds that the arbitration clause was part of a null, void and illegal contract. The County also requested a preliminary injunction against the arbitration pending the outcome of the de-

claratory judgment action. On March 24, 1988, the trial court entered an order in the equity action granting the preliminary injunction request and enjoining any arbitration of the matter until the declaratory action was resolved.

On July 11, 1991, Buckingham sought to have the preliminary injunction dissolved. In addition, on August 15, 1991, the County made a motion for judgment on the pleadings. In the motion for judgment on the pleadings, the County argued that the act of entering into the contract for three years by the earlier Board of Commissioners was a governmental act as opposed to a proprietary act and, therefore, could not bind any successor Boards of Commissioners for any time beyond the term of the Board which entered into the contract.

On November 27, 1991, the trial court denied Buckingham's motion to dissolve the preliminary injunction and it also denied the County's motion for judgment on the pleadings. In addressing Buckingham's motion, the trial court maintained that the declaratory judgment action concerning the validity of the contract must be resolved prior to arbitration. In addition, in addressing the County's motion the trial court concluded that the Board of Commissioners' act of entering into the contract was a proprietary act, not a governmental act and, therefore, the contract was binding upon successor Boards.

Buckingham appealed and the County cross-appealed the trial court's decisions to this Court which, in an opinion dated October 19, 1992, affirmed the trial court's order and denied dissolution of the preliminary injunction. In addition, this Court quashed the County's appeal as being interlocutory given that it was an appeal

1. There is no indication in the reproduced record whether Buckingham actually began performance of the contract by receiving admissions of clients into the Washington Center.

2. The arbitration clause provides in relevant part:

[a]ll claims, disputes and other matters in question rising out of, or relating to, this bid, offer, acceptance or resulting contract or performance under the terms of this contract, express or implied, shall be conducted in accordance with the Rules of the American Arbitration Association currently in effect for a contract dispute unless the parties mutually agree otherwise in writing.

from a motion for judgment on the pleadings. However, the Court then went on to conclude that the trial court was correct in deciding that the act of the Board of Commissioners in entering into the contract was a proprietary act binding on successor boards and not a governmental act. The matter was then remanded to the trial court for further proceedings. *See County of Butler v. Local 585, Service Employees International Union, AFL–CIO, (County of Butler I)*, 158 Pa.Cmwlth. 519, 631 A.2d 1389 (1992).

Thereafter, discovery ensued in the trial court. The County then moved for summary judgment in both the declaratory judgment action and the equity action based upon Buckingham's failure to provide a performance bond or other guarantee of performance as required by Section 1802 of the County Code.[3] Buckingham argued that summary judgment was not appropriate because Section 1802 of the County Code was not applicable to the matter because the contract was for a lease and not for materials or labor; that the County Commissioners had waived the bond requirements which should be a question of fact for the jury to determine; and that the issue of whether the contract was valid must be sent to arbitration under the contract.

The trial court granted the County's motions for summary judgment in both actions because Buckingham did not post the performance bond as required by the contract and because there was no evidence that the County had waived the requirement, the Court decided there was no issue of material fact to be decided by a jury. The trial court held that because Buckingham did not post the required bond, the agreement was never activated because the bond was an express condition which must occur before the activation of the duties of the contract and the arbitration clause and, therefore, could not be enforced. It is from this order of the trial court that the parties appeal and cross-appeal.[4]

■■■ In its cross-appeal the County raises the issues of whether the agreement is null and void as *ultra vires* and whether the subject matter of the County's agreement, i.e., the operation of a county prison, involves a governmental function or a proprietary function? Buckingham asks whether the summary judgment action should be precluded by the demand for arbitration on the basis that there was a valid contract because the bond requirement was a condition subsequent effective only after the contract requirement for arbitration became operative; whether the County ever raised the issue of Buckingham's noncompliance with the contractual requirement that it post a bond; whether there existed a genuine issue of material fact regarding the posting of the bond which should be decided by an arbitrator or the court before summary judgment is rendered.[5]

3. Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1802.

4. The County filed a cross-appeal in this case of the November 27, 1991 order of the trial court to preserve the issues determined against it that the County's action was proprietary, rather than governmental, and was also *ultra vires*. We note that the County prevailed before the trial court in that they were successful in their motion for summary judgment. *See Kriner v. Barbour*, 145 Pa. Cmwlth. 64, 602 A.2d 450 (1991)(cross appellants were successful before the trial court; therefore, cross appeal was quashed because of cross appellants' lack of standing to appeal). However, Buckingham has not raised the issue of a non-aggrieved party's appeal in its brief to this Court. Because standing is not jurisdictional under Pennsylvania law, if there was any such issue, it has been waived and this Court will not raise it *sua sponte*. *See Statewide Building Maintenance, Inc. v. Pennsylvania Convention Center Authority*, 160 Pa.Cmwlth. 544, 635 A.2d 691 (1993)(question of standing is not an issue of subject matter jurisdiction and court will not raise it sua sponte).

5. Our review in a summary judgment case is based upon Pa. R.C.P. No. 1035.2. Summary judgment is only proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter

■ The threshold question is whether Washington Center was a prison. While Buckingham characterizes Washington Center as a rehabilitation center, it is, in reality, a minimum-security prison providing drug rehabilitation services. The contract requires the operator to adopt rules and regulations in order to operate. Among those rules and regulations are those found at 37 Pa.Code § 95.221 – 95.248 entitled County Jails. Those accepted into Washington Center are limited to individuals from inside or outside of the County who must have been convicted of crimes but who, nevertheless, may be eligible for drug and alcohol treatment. They are referred to in the contract as inmates or detainees (awaiting prosecution). Their time served in Washington Center is counted as part of their sentence. There is no provision that inmates may come and go as they please. There are provisions in the "Operators Bid Proposal" for a twenty-four hour watch by the institution's personnel (page 14) that all policies of the Butler County Prison will apply to Washington Center (page 14), that work is part of every inmate's rehabilitation and that the existing programs on release and pre-release would "be expanded and developed and new programs formulated by mutual agreements between Buckingham Security, LTD., and the Board of Commissioners." (Page 28.) While its purpose is to provide drug and alcohol treatment, it was,

nonetheless, a prison. There was apparently no provision for the admission of non-convicted persons with a drug habit that were not in the prison system. Four (or more) walls confining inmates under such conditions do, in this case, a prison make for convicted criminals sentenced there, even if they receive special treatment to deal with their other problem with substance abuse.

■ Having determined that the facility is a prison, the next issue raised is whether the County's entering into the contract was an ultra vires act of the County Commissioners.[6]

This Court takes judicial notice that Butler County is a fourth class county. As such, the County is governed by the County Code[7] which provides for the establishment of a board of county commissioners who have the responsibility for, among many other things, the acquisition, construction, leasing of lands and buildings, including prisons[8] as well as for budgeting and levying taxes to provide funds for the operation of the County.[9] There is also established by statute a board of prison inspectors, commonly called the Prison Board, which is vested exclusively with "the safekeeping, discipline, and employment of prisoners and government and management" of any County prison or jail.[10] The first consideration is to deter-

of law. A grant of summary judgment will be reversed only where there has been an error of law or a manifest abuse of discretion. When reviewing an order granting summary judgment, we are obliged to read the record in the light most favorable to the non-moving party and resolve all doubt against the movant. *Moscatiello Construction Co. v. Pittsburgh Water and Sewer Authority*, 167 Pa. Cmwlth. 508, 648 A.2d 1249 (1994).

6. An ultra vires action is one which is performed without authority to act, beyond the scope or in excess of the legal powers authorized. Black's Law Dictionary, Sixth Edition.

7. Act of August 9, 1955, P.L. 323, §§ 101—3100, *as amended;* 16 P.S. §§ 101—3100.

8. Sections 2305, 2306, 2307 and 2315 of the County Code, 16 P.S. §§ 2305, 2306, 2307 and 2315.

9. Section 1783 of the County Code, 16 P.S. § 1783.

10. Section 408 of the Prison Board Act, Act of January 25, 1966, P.L. (1965) 1577, *as amended,* 61 P.S. § 408, provides:
    § 408. **Board of inspectors, counties of third to eighth classes; composition; powers and duties; sheriff's responsibility**
    (a)(1) The persons now holding the following offices, and their successors, in all counties of this Commonwealth of the third, *fourth,* and fifth classes, *shall compose a board, to be known by* the name and style of *inspectors of the jail* or *county prisons,* to

mine if the County Commissioners had any authority to unilaterally assume responsibility for the safekeeping, discipline and employment of inmates sentenced to the care of the County. If the County Commissioners acted without authority to do so, the contract would be ultra vires and it would not be necessary to decide whether or not the contract is for a governmental or a proprietary function or if the posting of a performance bond was a condition precedent or subsequent affecting the validity of the arbitration clause. Neither Buckingham nor the trial court address the statutory separation of responsibilities for the County prison. The operation of the prison is clearly in the exclusive hands of the Prison Board which has specific statutory direction on how to conduct itself including holding its meetings at the prison, appointing the warden, etc.[11] Nowhere is any authority cited, nor have we been able to find any statute, regulation or official action of the Prison Board in the rec-

ord authorizing the County Commissioners to enter into a contract for the safekeeping, discipline, employment, maintenance and governance of prisoners sentenced to the County facilities, as well as "any expense connected with the prison" without the express approval and recommendation of the Prison Board.[12]

But, here, the bid specifications promulgated by the County Commissioners clearly stated a contrary intent for the governance and operation of the prison under the contract:

> [I]t is the intention of the County of Butler to provide the necessary capital *improvements* for the operation of a minimum-security facility and to thereafter offer the *operation* of the facility to private enterprise through a bid process. The *responsibility for the operation would remain with* the Court and *the County Commissioners*, but *the day-to-day operation would be under the con-*

> wit: The president judge of the court of common pleas or a judge designated by him, the district attorney, the sheriff, the controller, and the commissioners of each of said counties; in which board, and the officers appointed by it, the safe-keeping, discipline and employment of prisoners, and the government and management of said institution, shall be *exclusively* vested; and that the present responsibility of the sheriff of each of said counties in regard to the safe-keeping of the prisoners shall cease and determine on their committal to said prison.... (Emphasis added.)

11. Section 409 of the Prison Board Act, 61 P.S. § 409 provides:

> **§ 409. Quorum; meetings; minutes, rules and regulations, warden, deputies, assistants, keepers; appointment and salaries**
> That, within thirty days after this act shall become effective in any county, the above-named *board shall meet* and organize by the election of a president and secretary. A *majority* of the members of said *board shall constitute* a quorum for the transaction of business, and *all actions of said board must be by the approval of a majority of all the members of said board*. The board *shall meet monthly*, or oftener if required, *and keep regular minutes* of their proceedings in a book, to be filed with the financial records of each of said counties, and *shall*

> *make such rules and regulations for the government and management of the prison, and the safe-keeping, discipline, and employment* of the *prisoners*, as may be deemed necessary. Such meetings *shall be held* at the prison no less than quarterly. *The board shall appoint a warden of the prison.* The warden, subject to the approval of the board, may appoint such deputy or deputies, assistant or assistants, keeper or keepers, as may be required in the taking care of the prison. The number and compensation of such deputies, assistants, or keepers shall be fixed by the salary board. (Emphasis added.)

12. Section 410 of the Prison Board Act, 61 P.S. § 410 states:

> **§ 410. Expenditures for prisons and prisoners; contracts**
> That *all the expenditures* required for the *support* and *maintenance* of prisoners, the *repairs* and *improvement* of said prison, shall be paid from the county treasury by warrants drawn, in the mode now prescribed by law, on the regular appropriation for the purpose, but no *warrant shall be certified by the controller for any expense connected with the prison unless on vouchers approved by a majority of said board* and endorsed by the president and secretary thereof .... (Emphasis added.)

*trol of the successful bidder/operator* .... (Emphasis added.)

(R.35.) In addition, although the contract incorporates by reference the policies of the existing Butler County Prison, there is nothing in the record showing that approval was ever obtained from the Prison Board by the County Commissioners to have the existing policies of the Prison Board for the existing maximum-security prison remain the same as for the minimum-security Washington Center. Further, there is no authority for the Prison Board to abdicate, or for the County Commissioners to usurp, any function statutorily delegated to the Prison Board, such as the release and pre-release programs for prisoners at Washington Center, which decisions would be made only by the County Commissioners and a private company rather than the Prison Board.

It is clear from the record that the Board of Commissioners never met with the majority members of the Prison Board in an official meeting and obtained the required approval to enter into the contract with Buckingham and to expend County funds for the safekeeping and other statutory duties entrusted to the Prison Board. (R.R. 13a, 247a.)

The Legislature, representing every class of county, left it to the discretion to the County Commissioners to establish, or not establish, local jails and prisons since every county may not desire, or be able, to afford a separate facility. It is clear, however, that while there is no statutory authority requiring that a County establish a prison, once county commissioners undertake to establish and fund its own, or a joint, facility for the safekeeping, discipline and employment of prisoners, they must establish a board of prison inspectors to govern and manage said institution and to approve the operation, maintenance and other expenses approved by the Prison

Board in a fourth class county such as Butler. Although the three county commissioners are members of the Prison Board, they do not even comprise a majority, since the sheriff, the controller, the district attorney and the president judge are also members thereof. Sections 408 and 409 of the Prison Board Act, 61 P.S. §§ 408, 409. It is obvious that the Legislature never intended that the County Commissioners should operate the prison since they relegated them to a minority, albeit substantial, role.

The statutory authority to provide for the safekeeping, discipline and employment of prisoners is, therefore, clearly vested in the Butler County Board of Prison Inspectors (Prison Board) who were never given an opportunity to carry out their statutory function. Even though the bid specifications show that the contracted operation would be under the sole control of the county commissioners and the Court (which could be a majority at a meeting of the Prison Board), they still have no authority outside of an official meeting to enter into such a contract without a prior affirmative recommendation by a majority vote of the Prison Board, including the other members of the Board in accordance with Section 409 of the Prison Board Act, 61 P.S. § 409. Otherwise, the statutory scheme for the case of prisoners sentenced to the County's care could be circumvented by the Commissioners who could operate the prison without the individual input and oversight needed from the president judge (or his designee), sheriff, controller and district attorney.

The contract is the result of an ultra vires act because it was not entered into under the authority of and with the approval of the Prison Board. The remaining issues do not, therefore, need to be addressed.[13]

13. We also note that in *Delaware County, et al. v. Delaware County Prison Employees Independent Union*, 552 Pa. 184, 713 A.2d 1135 (1998), the Pennsylvania Supreme Court found that based on the collective bargaining agreement the county's contracting with an outside private entity, Wackenhut Corrections Corporation, to provide corrections officers services to the Delaware County Prison, was not an unfair labor practice according to the

■ Accordingly, the order of the trial court granting the County's motion for summary judgment is affirmed, albeit for different reasons.[14]

### ORDER

AND NOW, this 7th day of October, 1999, the order of the Court of Common Pleas of Butler County at Nos. 88–088 and 88–012, dated December 30, 1997, granting the summary judgment motion of the County of Butler is affirmed.

Judge KELLEY concurs in the result only.

---

collective bargaining agreement. The issue of whether or not this contracting out was agreed to by the Prison Board, was ultra vires or a governmental or proprietary function of county government was not raised or addressed anywhere in the case.

14. An appellate court may affirm the trial court which reached the proper result even if the reasoning is different. *Mulberry Market v. City of Philadelphia*, 735 A.2d 761 (Pa. Cmwlth.1999).