814 A.2d 185

**John PECK, Appellee,**

v.

**DELAWARE COUNTY BOARD OF PRISON INSPECTORS, Appellant.**

Supreme Court of Pennsylvania.

Argued May 16, 2002.

Decided Dec. 31, 2002.

250

Brian Scott Frantum, Thomas C. Gallagher, for Delaware County Board of Prison Inspectors.

Michael J. Dougherty, for John Peck.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice NEWMAN.

We granted this appeal to determine whether the Delaware County Board of Prison Inspectors ("the Board") is the "statutory" employer, pursuant to Section 203 of the Workers' Compensation Act ("the Act"),[1] of John Peck ("Appellee"), a corrections officer at the Delaware County Prison ("Prison"), employed by the Wackenhut Corrections Corporation ("Wackenhut"). We hold that the Board is not the statutory employer of Appellee.

### FACTUAL AND PROCEDURAL BACKGROUND

The Board is the entity statutorily empowered to oversee the operations of the Prison. Prior to September of 1995, the corrections officers at the Prison, including Appellee, were employees of the Board. In August of 1995, the Board "privatized" the management and operation of the Prison by entering into an agreement with Wackenhut. Subsequent to this agreement, the Board dismissed all of the Prison corrections officers, including Appellee. *See Delaware County v. Delaware County Prison Employees Independent Union,* 552 Pa. 184, 713 A.2d 1135, 1136 (1998). Wackenhut immediately employed most of these corrections officers, including Appellee. *Id.* at 1136. On September 10, 1996, in the course of his duties, Appellee slipped in a puddle of water and fell while attempting to close a heavy door. The fall caused injuries to Appellee's left shoulder, which required two surgeries. Appellee filed a workers' compensation claim against his employer, Wackenhut, and was awarded benefits.

The instant matter arises from a tort action that Appellee brought against the Board, which Appellee alleges was negligent for failing to maintain the Prison in a safe condition. The Board moved for summary judgment on the grounds that it

1. Act of June 2, 1915, P.L. 736, § 203, *as amended,* 77 P.S. § 52.

enjoyed immunity from suit pursuant to Section 203 of the Act because, the Board claims, it qualifies as Appellee's statutory employer. The trial court granted summary judgment, finding that the Board is the statutory employer of Appellee and, therefore, immune from suit. On appeal, the Commonwealth Court reversed, holding that the Board is not the statutory employer of Appellee because: (1) the Board does not meet the statutory employer test articulated in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), and (2) Appellee is an employee of an independent contractor, Wackenhut. We granted allocatur to examine the statutory employer doctrine in the context of the privatization of a service that was once exclusively a public function: the operation of local prisons. In other words, did the Board, which formerly employed Appellee as a prison corrections officer when it operated and managed the Prison, lose its immunity from suit under the Act when it contracted with Wackenhut to operate and manage the Prison? We hold that it did and, accordingly, affirm the Commonwealth Court.

## DISCUSSION

We begin our analysis with an explanation of the "statutory" employer doctrine. What is a statutory employer? "A statutory employer is a master who is not a contractual or common-law one, but is made one by the Act." *McDonald*, 153 A. at 425. There are two primary provisions in the Act that define the rights and responsibilities of a statutory employer: Sections 203 and 302(b).

Section 302(b) explains the obligations of the statutory employer:

Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if pri-

marily liable for the payment of such compensation, has secured the payment thereof as provided for in this act. . . .

77 P.S. § 462. The purpose of this provision is clear: to ensure the payment of compensation benefits by a financially responsible party in the injured worker's chain of employment from subcontractor to general contractor. *See, e.g., Fonner v. Shandon, Inc.,* 555 Pa. 370, 724 A.2d 903, 907 (1999) (Section 302(b) "provides that a statutory employer can be held liable for benefits under the Act in reserve status"); *Smith v. Workmen's Compensation Appeal Board (Miller),* 152 Pa. Cmwlth.77, 618 A.2d 1101, 1103 (1992), *petition for allowance of appeal denied,* 537 Pa. 636, 642 A.2d 489 (1994) (Section 302(b) evidences "a clear intent to place primary responsibility for payment of worker's compensation benefits upon the first financially responsible employer in the subcontractor chain, even if that employer is not the one primarily liable").

 Section 203 provides the rights enjoyed by the statutory employer:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer of an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52. Although not apparent from its express terms, the language from Section 203 stating that the statutory employer "shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe" confers upon the statutory employer immunity from suit. This is because Section 303(a) of the Act, 77 P.S. § 481(a), makes the workers' compensation system the exclusive remedy for an injured employee seeking redress from an employer for an on-the-job injury. Section 203, by placing the statutory employer in the same position as the "contractual" or "common law" employer of the injured worker for tort liability purposes, entitles the statutory employer to the same immuni-

ty from suit that would be enjoyed by the "contractual" or "common law" employer.

But who is the statutory employer under the Act? More than seventy years ago, we addressed this question in *McDonald.* We offered the following formula:

> To create the relation of statutory employer under section 203 of the act ... all of the following elements must be present: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business intrusted [sic] to such subcontractor. (5) An employee of such subcontractor.

*McDonald,* 153 A. at 426. The classic statutory employer situation is in the construction industry, where a property owner hires the general contractor, who hires a subcontractor to do specialized work on the jobsite, and an employee of the subcontractor is injured in the course of his employment. *See Cranshaw Construction Inc. v. Ghrist,* 290 Pa.Super. 286, 434 A.2d 756 (1981) (general contractor immune from suit as statutory employer of injured employee of carpentry subcontractor). In those situations, the general contractor who meets the five-part *McDonald* test qualifies as the statutory employer of the subcontractor's employee, and is immune from suit by that employee.

■ In determining whether a party is a statutory employer, courts should construe the elements of the *McDonald* test strictly and find statutory employer status only when the facts clearly warrant it. The Superior Court has explained the basis for close scrutiny of claims of statutory employer immunity:

> [V]ery great care ... must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer. Section 203 of the [Act], which was designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employers may seek refuge.

*Travaglia v. C.H. Schwertner & Son, Inc.*, 391 Pa.Super. 61, 570 A.2d 513, 515 (1989), *petition for allowance of appeal denied*, 527 Pa. 618, 590 A.2d 758 (1990) (quoting *Stipanovich v. Westinghouse Electric Corp.*, 210 Pa.Super. 98, 231 A.2d 894, 898 (1967)).

█ Courts should hesitate to afford the "shield" of statutory employer immunity, particularly in light of our decision in *Fonner*. In *Fonner*, we considered whether the 1974 amendment to Section 302(b) of the Act amended Section 203 by implication. Prior to the 1974 amendment, Section 302(b) of the Act contained "elective" compensation language, which allowed a statutory employer to opt out of the workers' compensation system with respect to employees of subcontractors. *Fonner*, 724 A.2d at 905. A statutory employer who opted out of the workers' compensation system was relieved of the obligation to pay benefits to the injured worker, but also lost the immunity from suit provided by the Act. *Cf. Swartz v. Conradis*, 298 Pa. 343, 148 A. 529, 530 (1929). The 1974 amendment to Section 302(b) eliminated this option for statutory employers, however, obliging them to provide workers' compensation benefits for the injured employees of subcontractors but making them only secondarily liable in the event the subcontractor failed to provide coverage. In *Fonner*, we decided whether, when the General Assembly amended Section 302(b) in 1974, it intended to similarly amend Section 203 so that a statutory employer would enjoy immunity from suit *only* when it had actually paid workers' compensation benefits pursuant to Section 302(b). We rejected this argument. We held that if the General Assembly intended to amend Section 203 to require, as a precondition to statutory employer immunity, that the statutory employer actually have paid workers' compensation benefits, it would have done so explicitly. We discerned no legislative intent in the 1974 amendment to the Act to alter our caselaw, which held that payment of compensation benefits was not a prerequisite to eligibility for statutory employer immunity. *Fonner*, 724 A.2d at 906–907 (citing *Capozzoli v. Stone & Webster Engineering Corp.*, 352 Pa. 183, 42 A.2d 524 (1945)).

The consequence of the 1974 amendment to the Act, as interpreted by our *Fonner* decision, is that the traditional exchange of the workers' compensation system—payment of benefits to an injured employee in return for immunity from suit—does not apply in the statutory employer setting. Accordingly, a statutory employer "is still entitled to its historic immunity as a 'statutory employer' from suit for common law negligence" even though "the subcontractor which directly employed the injured worker carried workers' compensation insurance which paid benefits for the worker's injuries." *Fonner*, 724 A.2d at 907. In his Dissenting Opinion in *Fonner*, Mr. Justice Nigro criticized the majority's interpretation of the statutory scheme, noting the windfall for statutory employers who need not pay workers' compensation benefits in order to enjoy immunity from suit. *Fonner*, 724 A.2d at 908. Although we reaffirm our holding in *Fonner* that the statutory employer provisions in the Act require this result, we are mindful of the criticism that the scheme breaches the generally understood bargain of the workers' compensation system by permitting a statutory employer the immunity of the Act without having to "pay" for it. Accordingly, we endorse the principle that, for purposes of Section 203 statutory employer immunity, statutory employer status should be found only where all five elements of the *McDonald* test are clearly met.[2]

Turning to the instant dispute, we consider whether the Board qualifies as Appellee's statutory employer. The first element of the *McDonald* test requires the purported statutory employer to show that it is "an employer who is under contract with an owner or one in the position of an owner." *McDonald*, 153 A. at 426. This part of the *Mc-Donald* test consists of three distinct sub-elements: (1) an employer; (2) a contract, and; (3) an owner or one in the

---

**2.** Other courts have followed this principle and refused to find statutory employer status, for Section 203 immunity purposes, where all five elements of the *McDonald* test were not present. *See, e.g., Travaglia* (third element of *McDonald* test was not met due to nonexistence of a subcontract between purported statutory employer and subcontractor); *Cox v. Turner Construction Co.*, 373 Pa.Super. 214, 540 A.2d 944 (1988), *petition for allowance of appeal denied*, 522 Pa. 603, 562 A.2d 826 (1989) (same).

position of an owner. Under this test, an entity cannot serve in a dual capacity as "owner" and "employer." In *McDonald*, we rejected the statutory employer claim of the Levinson Steel Company, which owned a leasehold interest in the property on which it constructed a steel crane shed. We stated that "[a]n owner in erecting his own building, does so as an owner, not as a principal contractor or its synonym, 'employer,' although his regular course of business may be that of a builder." *McDonald*, 153 A. at 426. Consequently, "an owner is not a statutory employer." *Id.* Subsequent decisions by our appellate courts have similarly refused to allow dual owner/statutory employer status. *See, e.g., Smith, supra; Ashman v. Sharon Steel Corporation*, 302 Pa.Super. 305, 448 A.2d 1054 (1982).

The Board presently contends that it is the employer (i.e., general contractor), and that it is "under contract" with the "owner" of the Prison, whom the Board claims is Delaware County. The Board asserts that the "contract" between it and Delaware County appears in the Board's enabling legislation, which fixes the duties of the Board to oversee the operations of the Prison.[3] The Commonwealth Court rejected this argument on the grounds that the Board "stands in the shoes of the owner of the [Prison]," and, therefore, cannot qualify as the statutory employer. *Peck v. Delaware County Board of Prison Inspectors*, 765 A.2d 1190, 1194 (Pa.Cmwlth.2001). The court held that, for statutory employer purposes, "the name of the agency is irrelevant because the owner of the county prison is the County of Delaware, and it is simply a

---

**3.** The enabling legislation that created the Delaware County Prison Board of Inspectors no longer appears in either Purdon's Pennsylvania Statutes or Pennsylvania Consolidated Statutes. The original enabling legislation, Act of February 1, 1839, P.L. 5, related to the Chester County prison and set forth the responsibilities of the "board of inspectors" to: appoint "a keeper, matron and physician" for the prison; "direct the manner in which all bedding, clothing, provisions ... shall be purchased"; "determine the quantity and kind of food that shall be furnished"; and, "prevent all oppression, peculation or other abuse or mismanagement of the institution." By the Act of April 11, 1866, P.L. 562, the General Assembly created the present Board for Delaware County, defining its powers and responsibilities by incorporating the provisions of the 1839 act.

matter of bureaucratic organization that the Prison Board operates the prison on behalf of the County." *Id.* (citing *Allen v. United States,* 706 F.Supp. 15 (W.D.Pa.1989)). In response, the Board argues that it is an entity distinct from Delaware County with independent obligations and powers, which is not "simply a matter of bureaucratic organization." The Board notes that it is an indispensable party for any litigation involving management of the Prison, and that Delaware County cannot override the statutorily designated responsibilities of the Board. *See Nonemaker v. York County,* 62 Pa.Cmwlth. 200, 435 A.2d 675, 677 (1981) (York County Prison Board is "an independent entity which is responsible for the acts of its agents and which may be sued in its own name"); *see also County of Butler v. Local 585, Service Employees International Union,* 744 A.2d 338 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 563 Pa. 693, 693, 760 A.2d 857 (2000) (contract between Butler County Board of Commissioners and private corrections company to operate minimum security prison invalid because not approved by the Butler County Prison Board). Therefore, because Delaware County, and not the Board, owns the Prison, the Board contends that it does not serve in the prohibited dual capacity of owner and statutory employer.

We agree with the Board that the Commonwealth Court erred by disregarding the status of the Board as a legal entity distinct from Delaware County and concluding that the Board "stands in the shoes" of the owner of the Prison. However, we will affirm the decision of the Commonwealth Court because we find a fundamental element of the *McDonald* test lacking: a contract between the owner and the purported statutory employer. The Board claims that it is in the position of a general contractor, charged with operation and oversight of the Prison on behalf of the owner, Delaware County. However, the "contract" that the Board claims exists between it and Delaware County consists of the responsibilities for prison oversight and management conferred on the Board by the General Assembly in the Board's enabling legislation. Cognizant of the scrutiny that courts should apply

to claims of statutory employer status, we cannot find that a contract exists between Delaware County and the Board. It is basic contract law that for there to be an enforceable contract, "the parties themselves must agree upon the material and necessary details of the bargain." *Lombardo v. Gasparini Excavating Co.*, 385 Pa. 388, 123 A.2d 663, 666 (1956). There is no "bargaining" between Delaware County and the Board: the responsibilities of the Board to oversee the Prison result from acts of the General Assembly and not an independently negotiated agreement between the Board and Delaware County. Even if Delaware County is the owner of the Prison and the Board is something other than the owner, the absence of a contractual relationship between the two is fatal to the Board's claim of statutory employer status.

## CONCLUSION

Because we find that the Board is not the statutory employer of Appellee, we affirm the decision of the Commonwealth Court reversing the grant of summary judgment by the trial court.[4]

Justice NIGRO files a concurring opinion.

Justice CAPPY files a dissenting opinion.

Justice CASTILLE files a dissenting opinion in which Justice SAYLOR joins.

Justice NIGRO, Concurring.

I agree with the plurality that the Delaware County Board of Prison Inspectors is not immune from suit as a statutory employer under section 203 of the Worker's Compensation Act. Although I dissented in *Fonner v. Shandon, Inc.*, 555 Pa. 370, 724 A.2d 903 (1999), because I believed that a statutory employer should be required to show that it assumed responsi-

---

4. Because we conclude that the Board does not meet the test for statutory employer set forth in *McDonald*, we need not review the determination by the Commonwealth Court that Appellee is not the statutory employee of the Board because Wackenhut, Appellee's employer, qualifies as an independent contractor.

bility for providing workers' compensation to the injured employee before statutory immunity may attach, I recognize that our current law does not impose such a requirement. I remain concerned, however, that the five elements set forth in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), may be insufficient to prevent one deemed a statutory employer under section 203 from receiving an unfair advantage at the expense of an injured party. In that regard, I agree with the plurality that we must be cognizant that by providing for statutory employer immunity, the General Assembly has in effect altered the fundamental compromise underlying the workers' compensation system, *i.e.*, that an employer is granted immunity from suit *in return for* providing workers' compensation benefits to employees for work-related injuries. I therefore believe that statutory employer immunity must be strictly construed and the five *McDonald* requirements must be unequivocally satisfied before immunity will attach.

Justice CASTILLE, Dissenting.

I would find merit in appellant Board's argument that the first element of the interpretive test for statutory employer set forth in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424, 428 (1930), was satisfied by the Act of the General Assembly setting forth the Board's obligations and responsibilities. But, more importantly, I fear that the Court's overly technical approach to the statutory employer question presented fails to adequately account for the governmental employment situation at issue here. For both reasons, I respectfully dissent.

On its face, this case may appear to be relatively benign and narrow, involving as it does the workers' compensation consequences of a County electing to privatize a traditional governmental function, *i.e.*, prison services. But the question has far broader implications given the increasingly common phenomenon of governmental privatization of services. This revolution in the traditional way in which governmental services are delivered and governmental obligations are discharged em-

braces prison services, educational services, legal services, welfare services, engineering services, landfill operations, wastewater treatment, and airport services and security, just to name a few. In determining the consequences to the workers' compensation system of these unique and increasingly complex situations, this Court should be mindful of both the purpose of such compensation and the practical effect of our decision. I am not so sure that rigid adherence to a judicial paradigm that was devised to address a different and simpler reality, such as the classic building contractor/subcontractor relationships that have been the predicate for the lead decisions in this area, adequately account for today's world.

In holding that the Board is not appellee's statutory employer, the lead opinion begins by noting that, because actual payment of compensation benefits (as opposed to potential secondary liability for compensation payments) is not a prerequisite to eligibility for statutory employer immunity under § 203 of the Act, statutory employer status will be found only where all five elements of the 1930 *McDonald* test are **strictly** satisfied.[1] In this regard, the lead opinion pursues what I believe to be an unnecessarily hostile approach to statutory employer claims. The lead opinion justifies its prejudice against such claims by citing with approval two Superior Court decisions—*Travaglia v. C.H. Schwertner & Son, Inc.*, 391 Pa.Super. 61, 570 A.2d 513 (1989), *appeal denied*, 527 Pa. 618, 590 A.2d 758 (1990) and *Stipanovich v. Westinghouse Electric Corp.*, 210 Pa.Super. 98, 231 A.2d 894 (1967)—for the proposition that we are required to employ "close scrutiny" of claims of statutory employer immunity. According to these cases, the Workers' Compensation Act was designed to benefit workers, and thus courts must be careful not to allow employers to use the Act as a "shield." Op. at 255, 814 A.2d 189.

---

**1.** As the lead opinion notes, *McDonald* set forth the following formula for determining whether statutory employer status exists: "(1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business intrusted [sic] to such subcontractor. (5) An employee of such subcontractor." 153 A. at 426.

Superior Court cases, of course, do not bind this Court. But, more importantly, to the extent they suggest that we must approach these claims with a bias in favor of the employee, rather than in light of the competing interests balanced by the Act, I believe they are simply wrong. As this Court recently noted in *Thompson v. W.C.A.B. (USF & G Co.)*, 566 Pa. 420, 781 A.2d 1146 (2001), a case involving subrogation rights:

> We have consistently held in the past that the purpose of the Act was to provide the employee an exclusive right to benefits without the necessity of proving fault in exchange for abrogation of the employee's common law negligence remedies....
>
> \* \* \*
>
> The Workers' Compensation Act balances competing interests. The Act obliges subscribing employers to provide compensation to injured employees, regardless of fault, either through insurance or self-insurance. *See* 77 P.S. § 501. In exchange, employers are vested with two important rights: the exclusivity of the remedy of worker's compensation and the concomitant immunity from suit by an injured employee, *see* 77 P.S. § 481, and the absolute right of subrogation respecting recovery from third-party tortfeasors who bear responsibility for the employee's compensable injuries.... This leads to the conclusion that an employer who complies with its responsibilities under the Workers' Compensation Act should not be deprived of one of the corresponding statutory benefits based upon a court's *ad hoc* evaluation of other perceived "equities."

*Id.* at 1151, 1153 (citations omitted). *Accord Kohler v. McCrory Stores*, 532 Pa. 130, 615 A.2d 27, 30 (1992) (employee surrenders common law right to damages for injuries sustained in course of employment as result of employer's negligence in exchange for employee's statutory right to compensation for all such injuries regardless of employer's negligence) *citing, Socha v. Metz*, 385 Pa. 632, 123 A.2d 837, 839 (1956).

Applying its skeptical approach under the *McDonald* checklist, the lead opinion concludes that, although the Board is a

legal entity distinct from the County, it nevertheless is not appellee's statutory employer. The lead opinion reasons that, because the Board's responsibilities to oversee the prison results from legislation rather than an independently negotiated agreement between the Board and the County, there is no "contract" for purposes of the first element of the *McDonald* test. As a result, the Board is not entitled to statutory employer immunity.

To the extent that a finding that the Board is a statutory employer must always be squared with the archaic seventy-year old language in *McDonald,* as opposed to squaring it with the governing statute, *see* discussion *infra,* I see no deficiency here. As the lead opinion notes, the General Assembly passed enabling legislation, which sets forth the Board's responsibilities and obligations. I believe that these statutory provisions adequately form the "contract" under which the Board performs the work of managing the County's prison, and satisfy the "contract" contemplated by *McDonald* in the more common contractor/subcontractor relationship paradigm.

I do not dispute the lead opinion's statement that traditional notions of contract law presume that "the parties themselves must agree upon the material and necessary details of the bargain." Slip op. at 10 (citation omitted). But for purposes of the "contract" element created by this Court in *McDonald,* I do. not believe that we are obliged to slavishly adhere to formalistic contract notions. This is particularly so in situations where legislation serves the same purpose as a contract. This case illustrates this point. If the Board and the County had entered into a "traditional" contract for the management of the prison facility, with all "i's" dotted and "t's" crossed, that contract would have specified the Board's obligations and duties in the four corners of the written instrument. But the enabling statutes already set out those very same obligations and duties—the details of the bargain—for the Board's operation and management of the prison. Those statutory obligations should be recognized as the "contract" existing between the County as the owner of the premises and the Board for purposes of the first element of the *McDonald* test.

To the extent that the lead opinion's approach suggests that the *McDonald* test is to be viewed as a straitjacket from which no deviation is permitted, I believe that such an approach will lead us farther and farther afield from the actual language and purpose of the statute and fails to recognize contemporary work situations. The governmental entity in this case is not some mere bystander or potential third party tortfeasor. If the Board had not privatized these services, it unquestionably would be liable for compensation benefits and it would enjoy the concomitant protection of tort immunity. Moreover, if for some reason Wackenhut were unable to pay appellee for the injury here—now, or in the future—it is a safe bet that appellee would be looking directly to the Board as the logical secondary source for compensation payments, under section 302(b) of the Act, 77 P.S. § 462. The Court's decision today exposes statutorily-created governmental entities to potentially massive tort exposure merely because of privatization—notwithstanding that the injured employee is covered and is reimbursed under the workers' compensation system for the work injury and that the government exists as a potential secondary workers' compensation insurer. In light of these realities, I would hold that the Board is the statutory employer of appellee under the Act and, therefore, is entitled to tort immunity.

> Section 203 of the Act provides, by its terms, as follows: An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52. Section 203 thus creates secondary or contingent liability in a party who is not the direct employer of the injured worker. It acts "to hold a general contractor secondarily liable for injuries to the employees of a subcontractor, where the subcontractor primarily liable has failed to secure benefits with insurance or self-insurance." *Dougherty v. Con-*

*duit & Foundation Corp.*, 449 Pa.Super. 405, 674 A.2d 262 (1996), *appeal denied,* 546 Pa. 644, 683 A.2d 883 (1996), *quoting Caldarelli v. Mastromonaco,* 115 Pa.Cmwlth. 611, 542 A.2d 181 (1988), *appeal denied,* 520 Pa. 592, 551 A.2d 218 (1988) and 520 Pa. 592, 551 A.2d 218 (1988). With that potential liability, however, came the counterbalancing benefit of immunity from common law negligence suits arising from the work injury. It was because of the fact that secondary "employers" could invoke that immunity that this Court, over seventy years ago, set forth its five-part test in *McDonald* to determine when the vicarious "statutory" employer relationship should be deemed to exist.

It is important to remember and recognize, however, that it is the statute itself which controls and nothing in the language of § 203 requires the existence of a formal contract, as opposed to the sort of employment relationship that such a formal contract suggests. The *McDonald* test only interprets the statute; it does not control the statute. There is something incongruous in a judicial interpretation that would arguably permit secondary workers' compensation **liability** in the absence of a formal contract, but would not recognize statutory employer **immunity** without one. This point was cogently and persuasively made by the late Vincent A. Cirillo, former President Judge of our Superior Court, and I reproduce his analysis here:

Initially, it is imperative to recall the underlying purposes of the [Act,] as stated in *Qualp [v. James Stewart Co.,* 266 Pa. 502, 109 A. 780 (Pa.1920) ]:

The legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field and in the contracting scheme of work, the head of the endeavor, the person to whom an employee would naturally look.... The act intended to throw the burden on the man who secured the

original contract from the owner to the end that employees of any degree doing work thereunder might always be protected in compensation claims.

*Qualp,* ... 109 A. at 782. Thus, an immediate contractual relationship is not required between the general contractor and an employee of a subcontractor before the general contractor is liable for the payment of workmen's compensation benefits to that employee.... Likewise, since a direct contractual relationship is unnecessary to expose a general contractor to liability for workmen's compensation benefits, such a contractual relationship should not be required to achieve the status of a statutory employer.

*Travaglia v. C.H. Schwertner & Son, Inc.,* 391 Pa.Super. 61, 570 A.2d 513, 521 (1989) (Cirillo, P.J., dissenting) (citations omitted). President Judge Cirillo found further support for this proposition in Judge Barbieri's well-respected treatise on Pennsylvania's workmens' compensation law:

[I]n negligence cases, the general contractor has the full immunity from suit by the employe of a subcontractor which an immediate employer would have. He is the statutory employer and is the injured employe's employer for negligence immunity purposes and is secondarily liable for compensation even though the immediate employer or some other intermediate subcontractor ... is insured and responds fully on the injured employe's claim. The reason for this difference cannot be found in the language of the statute, but the rationale must be that, since the general contractor remains statutorily liable, although only in a reserve status, in return for this he has the statutory employer's immunity from statutory employe negligence suits in all events.

*Id.,* citing 1 Barbieri, *Pennsylvania Workmen's Compensation & Occupational Disease,* § 4.09(3) (1975) (footnotes omitted).

I agree with the considered observations of President Judge Cirillo and Judge Barbieri. I think that argument has substantial force where, as here, the relationship at issue does not fall into the traditional construction contract paradigm. Here, the governmental entity is the logical secondary source for

compensation. When a party, such as the Board here, is either primarily or secondarily liable for workmens' compensation benefits to an injured employee, that party should enjoy the concomitant tort immunity contemplated by the Act. Such an approach accounts for contemporary realities and maintains the balance built into the workers' compensation system. Because I would conclude that the Board remains potentially liable for workers' compensation benefits under the Act in a reserve status if Wackenhut defaults on its obligation, the Board should be entitled to statutory employer immunity.

Under the lead opinion's approach, appellee here, solely by virtue of the contract between the Board and Wackenhut, is permitted to seek a dual recovery for the same work injury. The Board thus loses immunity, even though it could face the prospect of liability under the Act. I would hold that a statutory employer relationship exists between the Board and appellee such that the Board is immune from appellee's negligence suit. I believe such a holding is commanded by the Act and is consistent with the *McDonald* test. Hence, I respectfully dissent.

Justice SAYLOR joins this dissenting opinion.

Justice CAPPY, Dissenting.

I respectfully dissent, joining only that portion of Justice Castille's dissenting opinion which would conclude that the legislation creating the Delaware County Board of Prison Inspectors is sufficient to satisfy the contract element of the test set out in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930) for determining whether a party is a statutory employer under Section 203 of the Workers' Compensation Act. 77 P.S. § 52.