**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1622
_____

CORY COTTINGHAM,
Appellant

v.

TUTOR PERINI BUILDING CORP.; KEATING BUILDING CORPORATION
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-14-cv-02793)
District Judge: Honorable Thomas N. O'Neill, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 11, 2017
_____

Before: HARDIMAN, SHWARTZ, and ROTH, <u>Circuit Judges</u>.

(Filed:  January 22, 2018)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

Cory Cottingham was injured while working at a construction site.  He appeals the

District Court's order granting summary judgment to Defendants Tutor Perini Building

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Corporation ("TPBC") and Keating Building Corporation on his negligence claims. Because TPBC is entitled to statutory employer immunity under Pennsylvania's Workers' Compensation Act, and Cottingham failed to demonstrate that Keating Building Corporation owed him a legal duty, we will affirm.

I

TPBC was the construction manager for the Chestnut Street Tower construction project in Philadelphia. TPBC is a wholly owned subsidiary of Tutor Perini Corporation. In 2009, Tutor Perini Corporation acquired Keating Building Corporation, which subsequently changed its name to Keating Building Company. Keating Building Company is a wholly owned subsidiary of Tutor Perini Corporation.

Cottingham was employed by a subcontractor, Carson Concrete Corporation, which TPBC hired to work on the Chestnut Street Tower site. In July 2013, Cottingham and a co-worker prepared a stack of concrete panels to be lifted by crane. When the crane lifted the panels from the ground, the panels slid and fell on Cottingham's foot, causing injury. Cottingham obtained a worker's compensation settlement from Carson.

Cottingham sued TPBC and Keating,[1] alleging negligence at the construction site. The District Court granted summary judgment to TPBC because it was protected by statutory employer immunity under Pennsylvania's Workers' Compensation Act, 77 Pa.

---

[1] Cottingham has sued Keating Building Company under its former name, Keating Building Corporation. Since the precise name of the entity is immaterial in this case, we will refer to this entity as "Keating."

Stat. §§ 52, 481(a), and to Keating because Cottingham had not established that Keating owed him a duty of care. Cottingham appeals.

II[2]

Our review of the District Court's order granting summary judgment is plenary. McNelis v. Penn. Power & Light Co., 867 F.3d 411, 414 (3d Cir. 2017). We apply the same standard as the District Court, viewing facts and drawing all reasonable inferences in the non-movant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party is entitled to judgment as a matter of law if the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

III

A

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

Pennsylvania's Workers' Compensation Act grants certain employers immunity from lawsuits for job-related injuries by establishing the workers' compensation system as the exclusive remedy for injured employees. See 77 Pa. Stat. §§ 52, 481(a). The Act immunizes employers who obtain workers' compensation insurance for workplace injuries. Id. § 481(a). The Act also immunizes so-called "statutory" employers, which are treated as employers under the Workers' Compensation Act but are not otherwise contractual or common-law employers of the injured employee. Peck v. Del. Cty. Bd. of Prison Inspectors, 814 A.2d 185, 187-88 (Pa. 2002). A statutory employer helps "to ensure the payment of compensation benefits" by serving as a "reserve" from which to pay benefits if the employee's direct employer does not. Id. at 188.

To be a statutory employer in the workers' compensation context, the following must be established:

> (1) [a]n employer who is under contract with an owner or one in the position of an owner[,] (2) [p]remises occupied by or under the control of such employer[,] (3) [a] subcontract made by such employer[,] (4) [p]art of the employer's regular business [entrusted] to such subcontractor[, and] (5) [a]n employee of such subcontractor.

Id. (quoting McDonald v. Levinson Steel Co., 153 A. 424, 426 (Pa. 1930)). Cottingham contests only the second factor of this conjunctive test. That factor is satisfied where the employer proves "either occupancy or control" of the premises. Braun v. Target Corp., 983 A.2d 752, 764 (Pa. Super. Ct. 2009) (citing Kelly v. Thackray Crane Rental, Inc., 874 A.2d 649, 656 (Pa. Super. Ct. 2005)). While the "employer's occupancy or control must be actual, [it] need not be exclusive." Id.

4

The record reflects beyond genuine dispute that TPBC both controlled and occupied the construction site. TPBC and the property owner signed the Construction Management Services ("CMS") Agreement, which made TPBC "solely" responsible for overseeing the construction and workers on the site. To this end, TPBC provided a safety orientation for those working on the project. The project's Environmental Health and Safety Plan also imposed a supervisory role on TPBC. The plan required each subcontractor "to attend a weekly safety meeting chaired by TPBC," App. 952, and to "report unsafe acts or conditions . . . anywhere on the project to TPBC immediately," App. 931. TPBC also monitored the subcontractors' weekly safety talks to their employees by requiring the subcontractors to furnish attendance sheets to TPBC, and used the Walsh Mobile Site Safety Audit System to identify, correct, and provide prompt feedback to subcontractors about "safety issues on the jobsite." App. 933. TPBC also had disciplinary authority over workers who engaged in unsafe actions.

TPBC was also contractually obligated to the property owner to "maintain a competent supervisory and office staff at the Site adequate in size and experience to coordinate and supervise the Work." App. 345-46. TPBC had an office on site and its safety policies were carried out by on-site safety supervisors. Cottingham himself testified that TPBC safety official Michael Hart or other TPBC personnel "walked the job site every single day." App. 140, 168.

Based upon the above, no reasonable juror could conclude TPBC lacked either actual control or occupancy of the construction site for purposes of the statutory employer test. See Braun, 983 A.2d at 765 (finding occupancy where the project

5

manager "was on site every[]day and easy to locate if needed"); Kelly, 874 A.2d at 657 (finding occupancy by the construction manager where its "project manager, secretary, and project superintendent [were] on the site daily," its employees were "regularly present simultaneously with [the subcontractor's] employees," and it "maintained a job trailer at the project site"); Emery v. Leavesly McCollum, 725 A.2d 807, 811 & n.3 (Pa. Super. Ct. 1999) (finding occupancy due to "an on-site project superintendent" and actual control of the site where the general contractor "was responsible for the overall safety of the job site," one of its employees "was responsible for making sure that [safety] regulations were followed and monitoring the subcontractors' safety programs," and the general contractor's "supervisor was generally on site if work was being performed"); see also Peck, 814 A.2d at 189 (describing the "classic statutory employer situation" in which "a property owner hires the general contractor, who hires a subcontractor to do specialized work on the jobsite, and an employee of the subcontractor is injured in the course of his employment"); Braun, 983 A.2d at 764-65 (same).

Cottingham asserts that the individuals who performed the safety tasks on the site were Keating employees and that this demonstrates that Keating controlled the site, not TPBC. "In determining which of two affiliated corporations is the employer of a particular employee, a court must ask which corporation has the right to control the work to be done by the employee and the manner of performing it." Joyce v. Super Fresh Food Mkts., Inc., 815 F.2d 943, 946-47 (3d Cir. 1987) (stating that indicia of control include the right to hire and fire, the obligation to pay wages, supplying tools for the job, and status as the entity to which the employee reports); see also Barnes v. Alcoa, Inc., 145

6

A.3d 730, 735 (Pa. Super. Ct. 2016) (stating that employer status exists where an entity "had the power and authority to direct and control" the employee's actions (internal quotation omitted)); Am. Road Lines v. Workers' Comp. Appeal Bd. (Royal), 39 A.3d 603, 611, 614-15 (Pa. Commw. Ct. 2012) ("We place particular emphasis on an entity's ability to hire, fire, discipline and set standards for [plaintiff's] conduct" in determining which entity exercised control over the plaintiff.).

Here, the record shows these individuals were TPBC employees. First, each was subject to TPBC policies. Second, they identified TPBC or Tutor Perini as their employer, not Keating. Third, the project's safety plan included a directory identifying TPBC as the "Construction Manager" and listing them as its safety supervisors. App. 929; see also App. 888. Fourth, as stated previously, Cottingham testified that Michael Hart, who had worked for Keating, worked for TPBC and walked around the site checking for safety.

Moreover, none of the five pieces of evidence that Cottingham relies upon to argue that Keating exercised control over the site and that the safety supervisors were Keating's employees (not TPBC's) supports this assertion or even presents a disputed fact on this point. First, that these employees received W-2s listing Keating as their employer is accorded little weight for this purpose. See, e.g., JFT Temps, Inc. v. Workmen's Comp. Appeal Bd. (Lindsay), 680 A.2d 862, 864 (Pa. 1996) ("The payment of wages may be considered, but is not a determinative factor."); Barnes, 145 A.3d at 735 (stating that "the mere fact that [an entity's] name was on [an individual's] paycheck was insufficient to raise a factual question for the jury" with respect to employer status).

7

Second, that the building permits and one letter regarding the project list Keating as the contact is similarly unavailing because the statutory employer test requires only that TPBC occupied or controlled the site, not that it did so exclusively. Braun, 983 A.2d at 764 (The "employer's occupancy or control must be actual, but need not be exclusive." (citing Kelly, 874 A.2d at 656)). Thus, to the extent the permits and letter suggest some Keating involvement on the project, they do not contradict TPBC's overall control of the construction site. Third, Bradley Statler's signature on the CMS Agreement, with the title "President Keating Building Corp.," App. 425, does not reflect Keating's control of the site nor negate TPBC's control.[3] In fact, Keating was not a party to the agreement, and the agreement makes no mention of Keating having a role in the project. Statler's signature line was part of TPBC's signature block and identifies Statler as "Attorney-in-Fact," id., referring to the executed Power of Attorney document granting Statler the ability to bind TPBC. In addition, elsewhere in the CMS Agreement, Statler was identified as the contact person for TPBC. Fourth, the press release announcing the 2009 Keating acquisition and stating that Keating "will continue to be managed by its current senior management team," App. 1107, was from 2009, before the Chestnut Street Tower project contracts were executed in 2012 and 2013, and therefore sheds no light on

---

[3] The record also shows that the document was executed at the request of the property owner, who had worked with Keating in the past and wanted comfort that Statler specifically could bind TPBC.

8

Keating's role at the construction site. Thus, none of these items shows that Keating controlled or occupied the site.[4]

For these reasons, there is no genuine dispute as to TPBC's occupancy and control of the construction site, and the District Court correctly held that TPBC was entitled to statutory employer immunity.

B

Cottingham also argues that the District Court erred in concluding that Keating had no duty to keep the work site safe and thus incorrectly granted summary judgment to Keating. The elements of negligence in Pennsylvania are:

> (1) a duty or obligation recognized by the law requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks;
>
> (2) a failure to conform to the standard required;
>
> (3) a causal connection between the conduct and the resulting injury;
>
> (4) actual loss or damage resulting in harm to the interests of another.

R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005); accord Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005). "Whether a defendant owes a duty to a plaintiff is a question of law." In re TMI, 67 F.3d 1103, 1117 (3d Cir. 1995); R.W., 888 A.2d at 746.

Cottingham has presented no evidence that Keating assumed responsibility for safety oversight at the Chestnut Street Tower project. There is no contract reflecting that

---

[4] Cottingham has also identified no Keating policies, rules, disciplinary measures, or other indicia of a right to control the project or the supervisors on site.

Keating undertook such an obligation, nor any evidence that Keating safety policies or procedures were in place at the site. Moreover, as discussed above, the safety personnel on site were TPBC employees (not Keating's), and the documents all show that TPBC monitored safety issues, provided safety training, and was the supervisor responsible for safety. Thus, the District Court correctly ruled that Keating owed no duty to Cottingham. Cf. Leonard v. Commonwealth, 771 A.2d 1238, 1240-42 (Pa. 2001) (affirming summary judgment for a general contractor and subcontractor because they "had no presence or control with respect to the work site" and owed no duty to plaintiff); Emery, 725 A.2d at 813 ("An owner who is out of possession and without control over the construction site has no duty to the employees of the independent contractor to whom the work and premises were entrusted.")

IV

For the foregoing reasons, we will affirm the District Court's order granting summary judgment.