J-S02024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| WILLIAM RONCASE | : | |
| | : | |
| Appellant | : | No. 797 MDA 2019 |

Appeal from the Judgment of Sentence Entered April 16, 2019
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0006228-2018

BEFORE: BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:                    **FILED FEBRUARY 20, 2020**

Appellant, William Roncase, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his bench trial convictions for theft by deception, theft by failure to make required disposition of funds received, and home improvement fraud.[1] We affirm.

The trial court opinion accurately set forth the relevant facts and procedural history of this case as follows:

**Factual History**

> In early 2017, [Victim's] ex-husband asked her to hire a contractor to renovate a property that he owned at 1512 East Market Street, York, Pennsylvania. This was to be an extensive project; the office space on the first floor of the property and the two apartments on the second floor needed to be completely gutted and redone, and the columns on the outside of the property needed to be replaced. [Victim] knew [Appellant] through a co-worker

_____

[1] 18 Pa.C.S.A. §§ 3922(a)(1), 3927(a); 73 P.S. § 517.8(a)(2), respectively.

and had knowledge of prior contracting work that he had done. [Victim] went to the property with [Appellant] to show him what work needed to be completed and to make sure that [Appellant] would be able to do the work. Based on her prior knowledge of [Appellant's] work and the walk through of the property, [Victim] believed that [Appellant] was experienced and would be able to complete the renovations at the East Market Street property.

On September 8, 2017, [Appellant] provided [Victim] with an estimate for the project. The estimate described some of the work that needed to be completed, the cost for materials, and the cost for labor. The estimated total was $31,500. There was also a notation from [Appellant] stating the amount that was paid as a down payment.

[Victim] paid [Appellant] $1,000 on September 8, 2017, to start. Between September 8, 2017 and January 12, 2018, [Victim] paid [Appellant] a total of $19,392. Receipts were written out for each payment. Some receipts specifically said what they were for, *e.g.*, on September 15, 2017 [Victim] paid [Appellant] $1,900 for floors. Most of the receipts just have the date and an amount.

A receipt from January 12, 2018 shows two amounts, $150 and $142, for building permits. However, Detective Hott testified that during his investigation he checked with Spring Garden Township and there were no building permits for 1512 East Market Street. …

In September, [Appellant] told [Victim] the project would take two months. In March hardly any work had been completed. Faucets, bathroom vanities, kitchen cabinets, and toilets were purchased with money provided by [Victim]. [Appellant] allegedly returned one of the bathroom vanities because it had a chip in it. When [Victim] went back to the property the rest of the above items were missing. When she asked [Appellant] about the missing items he told her that he put the rest in his shed for "safekeeping." [Victim] never saw the items again and they ultimately needed to be repurchased. [Appellant] pulled out old radiators from the home and sold the metal as scrap; the monies for which were never given to [Victim]. By February, [Appellant] stopped answering calls and text

messages from [Victim]. In March of 2018, with little work having been completed, the property in worse shape than it was when he started, and property missing[, Victim] finally got the police involved.

**Procedural History**

On March 29, 2018[,] a report of Home Improvement Fraud was generated with Spring Garden Township Police. On April 13, 2018[,] Detective Hott had an initial informational meeting with [Victim]. On April 10, 2018, [Detective] Hott met [Victim] at the East Market Street property and was able to see the lack of work that had been completed by [Appellant]. [Detective] Hott directed [Victim] to send a letter to [Appellant] via certified mail stating that the work had not been done and requesting a refund; this was sent on April 25, 2018. [Victim] received no response to her letter.

On May 23, 2018, Detective Hott filed a criminal complaint against [Appellant]. Initially, [Appellant] was charged with one count of Theft by Deception, and two counts of Home Improvement Fraud. One count of Theft by Failure to Make Required Disposition of Funds Received was added at trial. [Appellant] was arrested on July 3, 2018. A pre-trial conference was held on February 20, 2019[,] during which the case was set for a nonjury trial on April 1, 2019 before the Honorable Harry M. Ness.

The nonjury trial was held as scheduled. At the conclusion of the Commonwealth's case, [Appellant] moved for judgment of acquittal. The [c]ourt did not grant [Appellant's] motion [to dismiss all charges but] did dismiss count two. Defense Counsel did submit a Memorandum of Law in Support of [Appellant's] Motion for Judgment of Acquittal. The Trial Court scheduled a hearing for April 11, 2019, allowing ten days for a reserved decision.

On April 11, 2019, the trial court denied [Appellant's] motion and he was found guilty of count one, Theft by Deception, count three Home Improvement Fraud, and count four, Theft by Failure to Make Required Disposition of Funds. On April 16, 2019, [Appellant] was sentenced in count one[,] to three years' probation, in count three to

three years' probation, and in count four to three years' probation; these probationary sentences are to run concurrently with each other. [Appellant] was ordered to pay restitution in the amount of $19,392 [to Victim] in equal monthly installments over the probationary period. As a condition of probation, [Appellant] is to be employed, in a business other than the home improvement business, and work at least 35 hours a week.

On May 14, 2019[,] a Notice of Appeal was filed. This [c]ourt filed a Direction to Appellant to File a Statement of [Errors] Complained of Pursuant to Pa.R.A.P. 1925(b) on May 17, 2019. The Statement of [Errors] Complained of was filed on June 7, 2019. …

(Trial Court Opinion, filed June 25, 2019, at 1-6) (internal citations and footnotes omitted).

Appellant raises three issues for our review:

WAS THE EVIDENCE…INSUFFICIENT TO CONVICT [APPELLANT] OF THEFT BY FAILURE TO MAKE REQUIRED DISPOSITION OF FUNDS RECEIVED WHERE TAKING MONEY ON A CONSTRUCTION AGREEMENT IS NOT TAKING PROPERTY "OF ANOTHER" AND THERE WAS NO SPECIFIC AGREEMENT AS TO DISPOSITION OF ANY PARTICULAR FUNDS?

WAS THE EVIDENCE…SIMILARLY INSUFFICIENT TO SHOW THEFT BY DECEPTION WHERE [APPELLANT] DID NOT OBTAIN OR WITHHOLD ANY MONEY THROUGH FALSE STATEMENTS?

WAS THE EVIDENCE ALSO INSUFFICIENT TO ESTABLISH HOME IMPROVEMENT FRAUD WHERE THE LOOSE AGREEMENT BETWEEN [APPELLANT] AND [VICTIM] SPECIFIED NO COMPLETION DATES FOR ANY DISCRETE PORTIONS OF THE PROJECT OR FOR PROVISION OF MATERIALS?

(Appellant's Brief at 4).

A challenge to the sufficiency of the evidence implicates the following

- 4 -

legal principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

**Commonwealth v. Bullick**, 830 A.2d 998, 1000 (Pa.Super. 2003)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Harry M. Ness, we conclude Appellant's issues one and two merit no relief. The trial court opinion comprehensively discusses and properly disposes of Appellant's first and second questions presented. (**See** Trial Court Opinion at 7-17) (finding: **(1)** evidence showed Victim hired Appellant as contractor to renovate property; Victim gave Appellant down payment and 35 subsequent payments for labor and materials; Appellant did not complete any significant work on

project and did not contact Victim to explain his failure to perform work; Appellant's excuses at trial for his non-performance were not credible; thus, Appellant obtained Victim's property in form of payments, but property interest in those payments did not transfer to Appellant; additionally, although Appellant and Victim did not execute written contract, Appellant provided Victim written estimate for work, Victim paid Appellant for labor and materials, Appellant and Victim exchanged text messages regarding project, and Appellant performed minimal work on project; thus, Appellant and Victim had oral agreement regarding renovation project; evidence was sufficient to sustain Appellant's theft by failure to make required disposition of funds received conviction; **(2)** evidence showed Appellant did not use money Victim paid him for project on labor, materials, or permits; Appellant concealed his whereabouts from Victim, often lied to Victim about his presence at premises, and ignored her texts and phone calls; Appellant's minimal work on property did not justify payments he received from Victim; Victim did not see materials Appellant claimed he bought for project; Appellant failed to procure building permits for project; totality of circumstances established Appellant's intent not to perform on agreement; thus, Commonwealth presented sufficient evidence to convict Appellant of theft by deception). The record supports the trial court's rationale. ***See Jones, supra***. Therefore, as to Appellant's first two issues, we affirm on the basis of the trial court's opinion.

In his third issue, Appellant argues his September 2017 agreement with

Victim did not specify a completion date for the entire project or for any particular portion of the project. Appellant asserts the agreement also failed to specify the materials required for the project. Appellant suggests the home improvement fraud statute requires the terms of a home improvement agreement to be set forth in a written contract. Appellant asserts that even if he had originally agreed to complete the project within two months, Victim acquiesced to an extension because Victim continued to pay Appellant through February 2018. Appellant concludes the Commonwealth produced insufficient evidence to sustain his home improvement fraud conviction, and this Court should reverse that conviction and vacate the judgment of sentence. We disagree.

The Home Improvement Consumer Protection Act defines the offense of home improvement fraud, in relevant part, as follows:

**§ 517.8. Home improvement fraud**

**(a) Offense defined.**—A person commits the offense of home improvement fraud if, with intent to defraud or injure anyone or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

\*    \*    \*

(2) receives any advance payment for performing home improvement services or providing home improvement materials and fails to perform or provide such services or materials when specified in the contract taking into account any force majeure or unforeseen labor strike that would extend the time frame or unless extended by agreement with the owner and fails to return the payment received for such services or materials which were not provided by that date[.]

73 P.S. § 517.8(a)(2).

Regarding contract interpretation, "[f]or a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa.Super. 2006) (citing *Peck v. Delaware County Board of Prison Inspectors*, 572 Pa. 249, 260, 814 A.2d 185, 191 (2002)). "In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent." *Boyle v. Steiman*, 631 A.2d 1025, 1033 (Pa.Super. 1993), *appeal denied*, 538 Pa. 663, 649 A.2d 666 (1994). "[I]t is the general rule that where no time is agreed upon for the completion of a contract, it must be completed within a reasonable time under all the circumstances." *Francis Gerard Janson, P.C. v. Frost*, 618 A.2d 1003, 1006 (Pa.Super. 1993).

Further, every commercial contract usually imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *Hanaway v. Parkesburg Group, L.P.*, 641 Pa. 367, 385-86, 168 A.3d 146, 157 (2017). A party to a contract demonstrates a lack of good faith through, *inter alia*, "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's

performance." ***Stamerro v. Stamerro***, 889 A.2d 1251, 1259 (Pa.Super. 2005) (internal citation and quotation marks omitted).

Instantly, the record shows Appellant provided Victim a written estimate for the renovation project in the amount of $31,500.00 for labor and materials. On the written estimate, Appellant handwrote: "Received $1,000 to start—9-8-17." Victim testified she believed the work would begin on that date. Appellant told Victim he could complete the job in two months, and Victim said she would be happy if he finished the work by the end of December 2017.

Nevertheless, Appellant did not finish the work in December 2017. Instead, Appellant told Victim that he needed additional time to finish the renovations, so Victim paid Appellant for labor and materials on the project past December 2017. By March 2018, however, the project remained incomplete, Appellant had performed only minimal work on the property and failed to obtain necessary building permits, and Appellant was unresponsive to Victim's phone calls and text messages. Additionally, multiple items were missing from the premises, including pipes and radiators (which were in the building prior to September 2017), and materials for which Victim had given Appellant money to purchase for the renovation. Appellant failed to produce receipts for the purchase of the materials and did not return any of the missing items.

Based upon the written estimate, as well as the testimony of Victim and Appellant, the trial court determined Appellant and Victim entered into an oral

contract for labor and materials, under which Appellant would start work on September 8, 2017, and complete the project by the end of December 2017. The trial court, as fact-finder, was free to credit Victim's testimony concerning the terms specified in the oral contract. ***See Jones, supra***. Contrary to Appellant's assertion, the home improvement fraud statute does not require the homeowner to memorialize the terms of a home improvement agreement in a written contract. ***See*** 73 P.S. § 517.8(a)(2). In fact, the statute expressly contemplates oral home improvement agreements. ***See*** 73 P.S. § 517.8(a)(1), (4) (explaining person commits home improvement fraud if, with intent to defraud or injure anyone or with knowledge that he is facilitating fraud or injury to be perpetrated by anyone, actor (1) makes false or misleading statement to induce, encourage or solicit person to enter into any written or oral agreement for home improvement services or provision of home improvement materials or to justify increase in previously agreed upon price; or (4) damages person's property with intent to induce, encourage or solicit that person to enter into written or oral agreement for performing home improvement services or providing home improvement materials).

Further, the fact that Victim paid Appellant beyond December 2017 does not indicate that Victim "acquiesced" to an unlimited extension of time. Appellant failed to finish the agreed-upon work and procure the necessary materials and permits for the project by March 2018. Rather, Appellant performed only perfunctory work and multiple installations were missing from

the premises. Appellant also stopped returning Victim's phone calls and text messages. Under these circumstances, Appellant's performance (or lack thereof) on the contract was not reasonable and failed to demonstrate good faith and fair dealing. *See Hanaway, supra*; *Stamerro, supra*; *Francis, supra*. Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to convict Appellant of home improvement fraud.[2] *See Jones, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Musmanno joins this memorandum.

President Judge Emeritus Bender concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/2020

---

[2] To the extent Appellant complains the trial court relied improperly upon a non-precedential decision of this Court when it disposed of Appellant's sufficiency challenge concerning his home improvement fraud conviction, that claim merits no relief. *See Commonwealth v. Reese*, 31 A.3d 708, 727 (Pa.Super. 2011) (*en banc*) (stating appellate court may affirm on any basis as long as ultimate decision is correct).

- 11 -

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY,**
**PENNSYLVANIA**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **COMMONWEALTH OF** | : | **NO. CP-67-CR-6228-2018** |
| **PENNSYLVANIA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM RONCASE,** | : | |
| **Appellant** | : | |

**OPINION IN SUPPORT OF ORDER**
**PURSUANT TO Pa.R.A.P. 1925(a)**

Appellant, William Roncase, appeals to the Superior Court of Pennsylvania

from the judgment of sentence issued by the trial court on April 16, 2019. On May

14, 2019, Appellant filed a Notice of Appeal. Appellant was directed to file a

Concise Statement of Matters Complained of on Appeal. Appellant filed a

Statement of Matters Complained on June 7, 2019. The trial court now issues this

1925(a) Opinion.

**Factual History**

In early 2017, Maria Kanellakis' ex-husband asked her to hire a contractor to

renovate a property that he owned at 1512 East Market Street, York,

Pennsylvania.[1] This was to be an extensive project; the office space on the first

floor of the property and the two apartments on the second floor needed to be

---

[1] Notes of Trial, pg. 18

1

completely gutted and redone, and the columns on the outside of the property needed to be replaced. Kanellakis knew William Roncase through a co-worker and had knowledge of prior contracting work that he had done. Kanellakis went to the property with Roncase to show him what work needed to be completed and to make sure that Roncase would be able to do the work. Based on her prior knowledge of Roncase's work and the walk through of the property, Kanellakis believed that Roncase was experienced and would be able to complete the renovations at the East Market Street property.

On September 8, 2017, Roncase provided Kanellakis with an estimate for the project.[2] The estimate described some of the work that needed to be completed, the cost for materials, and the cost for labor. The estimated total was $31,500. There was also a notation from Roncase stating the amount that was paid as a down payment.

Kanellakis paid Roncase $1,000 on September 8, 2017, to start. Between September 8, 2017 and January 12, 2018, Kanellakis paid Roncase a total of $19,392. Receipts were written out for each payment. Some receipts specifically said what they were for, e.g. on September 15, 2017 Kanellakis paid Roncase $1,900 for floors.[3] Most of the receipts just have the date and an amount.[4]

---

[2] Commonwealth's Exhibit 1
[3] Commonwealth's Exhibit 2
[4] Commonwealth's Exhibits 3, 4, 5, 6, 7, 8, 9, 10, 11

2

A receipt from January 12, 2018 shows two amounts, $150 and $142, for building permits. However, Detective Hott testified that during his investigation he checked with Spring Garden Township and there were no building permits for 1512 East Market Street.[5] This was really just the tip of the iceberg of Roncase's deceitful actions.

In September, Roncase told Kanellakis the project would take two months. In March hardly any work had been completed. Faucets, bathroom vanities, kitchen cabinets, and toilets were purchased with money provided by Kanellakis. Roncase allegedly returned one of the bathroom vanities because it had a chip in it. When Kanellakis went back to the property the rest of the above items were missing. When she asked Roncase about the missing items he told her that he put the rest in his shed for "safekeeping". Kanellakis never saw the items again and they ultimately needed to be repurchased.[6] Roncase pulled out old radiators from the home and sold the metal as scrap; the monies for which were never given to Kanellakis. By February, Roncase stopped answering calls and text messages from Kanellakis.[7] In March of 2018, with little work having been completed, the

---

[5] N.T., 123

[6] The Trial Court gave Roncase the opportunity to return the items he allegedly kept in his shed to Kanellakis and provide the receipt from the return of the bathroom vanity; the items have still not been returned and no receipt has been provided.

[7] N.T., 55

3

property in worse shape than it was when he started, and property missing Kanellakis finally got the police involved.

## Procedural History

On March 29, 2018 a report of Home Improvement Fraud was generated with Spring Garden Township Police. On April 3, 2018 Detective Hott had an initial informational meeting with Maria Kanellakis.[8] On April 10, 2018, Hott met Kanellakis at the East Market Street property and was able to see the lack of work that had been completed by Roncase.[9] Hott directed Kanellakis to send a letter to Roncase via certified mail stating that the work had not been done and requesting a refund; this was sent on April 25, 2018.[10] Kanellakis received no response to her letter.

On May 23, 2018, Detective Hott filed a criminal complaint against Roncase. Initially, Roncase was charged with one count of Theft by Deception[11], and two counts of Home Improvement Fraud.[12] One count of Theft by Failure to Make Required Disposition of Funds Received[13] was added at trial.[14] Roncase was arrested on July 3, 2018. A pre-trial conference was held on February 20, 2019

---

[8] N.T. 114
[9] N.T. 116
[10] N.T. 118
[11] 18 Pa. C.S.A. §3922(a)(1)
[12] 73 P.S. §517.8(a)(2)
[13] 18 Pa. C.S.A. §3927(a)
[14] N.T. 6

4

during which the case was set for a non-jury trial on April 1, 2019 before the Honorable Harry M. Ness.

The non-jury trial was held as scheduled. At the conclusion of the Commonwealth's case, Defense Counsel moved for judgment of acquittal.[15] The Court did not grant Defense's motion but did dismiss count two.[16] Defense Counsel did submit a Memorandum of Law in Support of Defendant's Motion for Judgment of Acquittal. The Trial Court scheduled a hearing for April 11, 2019, allowing ten days for a reserved decision.

On April 11, 2019, the trial court denied Defendant's motion and he was found guilty of count one, Theft by Deception, count three Home Improvement Fraud, and count four, Theft by Failure to Make Required Disposition of Funds. On April 16, 2019, Defendant was sentenced in count one to three years' probation, in count three to three years' probation, and in count four to three years' probation; these probationary sentences are to run concurrently with each other. Defendant was ordered to pay restitution in the amount of $19,392 to Maria Kanellakis in equal monthly installments over the probationary period. As a condition of probation, Defendant is to be employed, in a business other than the home improvement business, and work at least 35 hours a week.[17]

---

[15] N.T. 134
[16] N.T. 135
[17] Sentencing Hearing Transcript, page 14

5

On May 14, 2019 a Notice of Appeal was filed. This Court filed a Direction to Appellant to File a Statement of Matters Complained of Pursuant to Pa. R.A.P. 1925(b) on May 17, 2019. The Statement of Matters Complained of was filed on June 7, 2019. This Opinion Pursuant to 1925(a) now follows.

## Issues Raised on Appeal

1. Whether the evidence was sufficient to sustain William Roncase's conviction for theft by failure to make required disposition of funds received.
2. Whether the evidence was sufficient to sustain William Roncase's conviction for theft by deception.
3. Whether the evidence was sufficient to sustain William Roncase's conviction for home improvement fraud.

## Discussion

Defense Counsel raises a number of sufficiency of evidence arguments. That is, the Commonwealth did not present sufficient evidence to meet the elements of the crimes for which Appellant was convicted.

> The standard used to analyze a sufficiency of the evidence claim is as follows: Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.[18]

---

[18] *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

6

In proving its case, the Commonwealth may rely solely on circumstantial evidence.[19] The Commonwealth "need not preclude every possibility of innocence."[20] If there is doubt about a Defendant's guilt, the doubt "may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances."[21] The jury, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence,"[22] and the court "may not weigh the evidence or substitute our judgment for that of the fact-finder."[23]

1. The evidence was sufficient to sustain William Roncase's conviction for theft by failure to make required disposition of funds received.

The offense of theft by failure to make required disposition of funds received is comprised of four elements: 1) the obtaining of the property of another; 2) subject to an agreement or known legal obligation upon the receipt to make specified payments or other disposition thereof; 3) intentional dealing with the property obtained as the defendant's own; and 4) failure of the defendant to make the required disposition of the property.[24]

---

[19] *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. Ct. 2012)(citing *Commonwealth v. Markman*, 916 A.2d 586, 598 (2007)).

[20] *Commonwealth v. Tejada*, 107 A.3d 788, 792 (Pa. Super. Ct. 2015).

[21] *Id.*

[22] *Id.*

[23] *Commonwealth v. Pouliczek*, 2015 WL 9594364, *8 (Pa. Super. Ct. 2015)(citing *Com. v. Bohonyi*, 900 A.2d 877, 881-82 (Pa. Super. Ct. 2006)).

[24] *Commonwealth v. Morrisey*, 654 A.2d 1049, 1052 (Pa. 1995) (citing 18 Pa.C.S. §3927).

7

Appellant argues that the first element has not been met. Appellant's reasoning relies on the Superior Court's decision in *Commonwealth v. Austin*, 393 A.2d 36, 38 (Pa. Super. 1978). In *Austin*, The Superior Court held that the acceptance of advance money on a construction contract is the property of another. They reasoned that the ownership of the money passed to the defendant and he could not fraudulently convert his own property. In *Austin*, the Appellant, a contractor, was given a down-payment by the homeowners that was to be used towards material; he was also given a subsequent payment for labor. Once he received the money Appellant worked on the property for two months, only discontinuing the project when he realized there was more work than he had initially anticipated. *Id.* At 38.

We find the reasoning proffered by the Superior Court in *Commonwealth v. Robichow*, 487 A.2d 1000 (Pa. Super. 1985), to be more persuasive. In *Robichow*, Appellant entered into an agreement to do home repairs for the victim. Appellant received an advance payment from the home-owner and then never completed the repairs. The Superior Court rejected the reasoning in *Austin*, noting the significant difference in the fact that Appellant in *Austin* actually completed work for two months whereas in *Robichow* Appellant did not complete any work and did not contact the homeowner to explain his failure to do the work. *Id.* at 1003. It was the

8

actual work that was completed in *Austin* that transformed the money into Appellant's own property.

The material facts in the instant case are more similar to *Robichow* than *Austin*. In the instant case, Appellant did receive an initial down-payment from Kanellakis as well as thirty five additional payments, ranging in amounts from $100 upwards to $2,500. Unlike the appellant in *Austin*, Roncase did not use the money to complete work for Kanellakis for two months, or any length of time. At this point it is unclear what Roncase did with the money he received from Kanellakis but little of it was spent on the remodeling project he was hired to do. Like in *Robichow*, Appellant failed to complete a substantial part of the work. Additionally, Roncase did not contact Kanellakis to explain his failure to do the work. It was only when confronted by Kanellakis about the lack of work being completed that Roncase proffered excuses about why the work was not done; the Trial Court finds the excuses to lack credibility.

Where a contractor receives a down-payment from a home-owner to complete a construction project and no significant work is completed on the project and the contractor makes no effort to contact the homeowner to explain his failure to do the work, the money does not transfer ownership and is still property of another. Because Roncase received a down payment, and subsequent payments, from Kanellakis, failed to work on the project he was hired to do, and did not

9

contact Kanellakis to explain his failure to do the work the property interest in the money was not transferred to Roncase and he therefore obtained the property of another, fulfilling the first element of the offense.

Appellant also claims that there was no agreement and therefore the second element of the offense was not met and there was no agreement. Appellant again relies on *Commonwealth v. Austin*, in which the second element was met when there was a contract and the receipt for the down payment noted that it was for materials. *Id.* at 37. We acknowledge that there was no written contract between Roncase and Kanellakis, but that does not mean that there was no agreement as required by the statute.

All that is required in the second element of the Failure to Make Required Disposition of Funds Received statute is an agreement, or known legal obligation. This has been broadly interpreted in case law. In *Commonwealth v. Gallagher*, in a case where the agreement was one for bribery, the Cumberland County Court of Common Pleas acknowledged that the section applies to all agreements, both legal and illegal.[25] The Pennsylvania Superior Court has also broadly interpreted what it means to have an agreement even when there is no written contract. In *Commonwealth v. English*, the Superior Court found that there was an agreement when businesses paid Appellant to publish and print a directory and that agreement

---

[25] *Commonwealth v. Gallagher*, 6 Pa. D. & C.3d 520, No. 780 Criminal 1977.

10

was breached when Appellant failed to pay a third party to actually print the directory.[26] In their decision, the Superior Court relied upon the reasoning in *Commonwealth v. Crafton*, in which a travel agent took funds for a chartered trip and the participants expected her to use the funds to make arrangements with third parties.[27] When the agent failed to maintain enough to pay for the airline this was found to be a violation of the agreement because she took the money knowing that she would have to pay for the travel arrangements.[28] At the same time, the Superior Court has not said that anything goes. In *Commonwealth v. Wetmore*, when determining whether or not a promise made by the appellee was sufficient to create an agreement the Superior Court stated that bare words are not enough.[29] This follows the standards set forth in contract law, in which consideration must be exchanged for a contract to be valid.

It is clear that the facts in the instant case pass the "bare words" standard from *Wetmore*. Like in both *English* and *Crafton,* Roncase received money from Kanellakis to perform a service. In the instant case, there was no written contract. There was, however, a written estimate, a down payment for work, receipts for payments made by Kanellakis to Roncase for labor and materials for the renovation, and text messages between Roncase and Kanellakis regarding the project. Additionally,

---

[26] *Commonwealth v. English*, 597 A.2d 122 (Pa. Super. 1991).
[27] *Commonwealth v. Crafton*, 367 A.2d 1092, 1095 (Pa. Super. 1976).
[28] *Id.*
[29] *Commonwealth v. Wetmore*, 447 A.2d 1012, 1014 (Pa. Super. 1982).

11

Roncase did actually perform some work in exchange for the money paid to him by Kanellakis.

Finally, both Defense and Appellate counsel have conceded that there was an agreement. During trial, Defense Counsel made reference to the agreement several times: "the sole timeline for Your Honor to look at is my client's intention at the time this agreement was entered"[30]; "Mr. Roncase entered this agreement with the intent to complete the job"[31]; "His charges revolve around the contract as a whole."[32] In their Statement of Errors Complained of, Appellant Counsel referred to the agreement twice: "In fact, there was no evidence that Roncase intended not to perform on his agreement when Maria Kanellakis gave him money"[33]; "Where the money was given to Roncase pursuant to the construction agreement..."[34] All of these things combined show a meeting of the minds between Roncase and Kanellakis and fit the statutory requirement of an agreement, fulfilling the second element of the offense of Failure to Make Required Disposition of Funds Received.

As all elements of the offense of theft by failure to make required disposition of funds received have been met, there was sufficient evidence to find Roncase guilty of this offense.

---

[30] N.T., 182
[31] N.T., 184
[32] N.T., 184
[33] Statement of Errors Complained of on Appeal, pg. 3
[34] *Id.*

12

2. The evidence was sufficient to sustain William Roncase's conviction for theft by deception.

A person is guilty of theft by deception if they: 1) intentionally obtain or withholds 2) property of another 3) by deception. A person deceives if he intentionally 1) creates or reinforces a false impression, including a false impression as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise.[35]

Appellant alleges that the first element of the offense has not been met. They argue that there was no evidence that Roncase intended not to perform on his agreement when Kanellakis gave him money. In supporting their position, Appellant cites *Commonwealth v. Bruce*.[36] We find this case to be unpersuasive. In *Bruce*, a lumber broker worked with Ongley, a sawmill owner, to sell lumber to a buyer. Bruce would take possession of the lumber from Ongley and after being paid by the buyer, Bruce would take his cut and then give the remaining profits to Ongley. Their arrangement worked for several months. Eventually, Bruce owed Ongley a debt; Bruce gave Ongley a check for the debt and in return Ongley gave Bruce more lumber. Bruce was charged with theft by deception after the check bounced and he failed to pay for the additional lumber Ongley gave him. The

---

[35] 18 Pa. C.S.A. §3922(a)(1)
[36] *Commonwealth v. Bruce*, 607 A.2d 294 (Pa. Super. 1992).

Superior Court reversed the trial court's finding of guilt. They reasoned that "Appellant's intention not to pay for the lumber at the time he received it cannot be inferred from the fact alone that he did not pay for all the lumber."[37] Additionally, the court also considered the fact that "at no time during their relationship did appellant conceal his whereabouts or true identity from Ongley."[38]

*Bruce* is materially different than the instant case. Whereas Bruce and Ongley had prior business dealings in which Ongley was paid for the lumber, Kanellakis did not have prior dealings with Roncase. This is significant because it shows that there was a business relationship between Ongley and Bruce and time was not of the essence for Ongley in the past. In the instant case, Roncase would go to Kanellakis for money on a weekly or sometimes even more frequent basis. Sometimes he would say what the money is for, as evidenced by notations on the receipts. Even when Roncase would say what the money was specifically for it is unclear if he actually used the money for that purpose. For example, Roncase told Kanellakis he needed money for permits. We now know that he never got permits for the 1512 East Market Street property.

Unlike in *Bruce*, there were times when Roncase would conceal his whereabouts from Kanellakis. There were times when Kanellakis would go to the

---

[37] *Id.* at 297
[38] *Id.*

house and Roncase would not be there when he said he would be. Additionally, Roncase would ignore both phone calls and text messages from Kanellakis.

The Superior Court in *Bruce* focused on Bruce's intent at the time he received the lumber. Appellant focuses on this and argues "this [Appellant's subpar work] does not translate into intent to deceive at the relevant time." This argument is made as if there was only a single relevant time. However, we find that there was not just a single relevant time. Appellant's conduct may be scrutinized every time he received money from Kanellakis, which was approximately 36 times. We recognize that some work was done, for example new pillars were constructed outside, and this work would have required money for the materials. One of the most telling instances of conduct involved the building permits. Appellant went to Kanellakis and said he needed $150 and $142 for building permits. When the detective investigated, there were no building permits. This is just one example of where Appellant took advantage of Kanellakis' naivety.

We find *Commonwealth v. Shapiro*[39] to be more persuasive. In *Shapiro*, the Superior Court found the first element of theft by deception to be present when Shapiro appropriated his clients' funds for his own use. In the instant case, we find that Appellant also appropriated Kanellakis' funds for his own use. First, Appellant would ask Kanellakis for money for "materials" but when Kanellakis would go to

---

[39] *Commonwealth v. Shapiro*, 418 A.2d 594 (Pa. Super. 1980).

the property she did not see the materials Appellant said he was buying.[40] Other times Appellant would ask Kanellakis for an "advance." When Kanellakis would ask why he needed an advance it was always for personal reasons such as the water pump going out on his car or having to travel to Philly to see his sick brother.[41] We certainly are not saying that a contractor should not be getting paid for labor, but the testimony reflects that very little labor was actually being done.[42]

To find intent one may look at the totality of the circumstances. In the instant case, Appellant's failure to uphold his end of the agreement, failure to complete a substantial portion of the work requested by Kanellakis, his use of Kanellakis' money as his own, his propensity to conceal his whereabouts by not being at the property when he said he would be and not responding to Kanellakis' phone calls and text messages are indicative of Appellant's intent. For the foregoing reasons we find that the first element of theft by deception has been met.

Appellant argues that the second element of theft by deception has also not been met. That is, that Appellant did not take the property of another because under the construction agreement it was his money when he received it. This element is substantially the same as the first element of theft by failure to make

---

[40] *N.T.*, 32

[41] N.T., 36

[42] Kanellakis observed that nothing was being done and when she brought it up to Appellant he always told her that it would be "done next week." N.T. 37

16

required disposition of funds. We have already analyzed this in the first section and would incorporate our reasoning herein. We found that the property interest in the money did not pass to Appellant and it remained property of another. For the foregoing reasons, we find that the second element of theft by deception has been met.

As all elements of the offense of theft by deception have been met, there was sufficient evidence to find Roncase guilty of this offense.

3. There was sufficient evidence to find Appellant guilty of home improvement fraud.

A person is guilty of home improvement fraud if they: 1) receive any advance payment for performing home improvement services or providing home improvement materials; and 2) fail to perform or provide such services or materials when specified in the contract; and 3) fail to return the payment received for such services or materials that were not provided by that date; and 4) do so with intent to defraud or injure someone.

Appellant argues that the contract in this case does not specify any completion date for the project and therefore the second element of the offense of Home Improvement Fraud has not been met. This argument is unpersuasive.

17

There is not an abundance of case law regarding the home improvement fraud statute. However, we find *Commonwealth v. Geske*[43] to be persuasive in the instant case. In *Geske,* the Appellant and victim had a contract for various home improvement projects.[44] Appellant was supposed to install kitchen cabinets on September 4, 2016 and was supposed to begin masonry work on September 15, 2016.[45] Appellant did do some work on the kitchen cabinets on September 4 but left the project incomplete and left the victim's kitchen in disarray; September 4 was the last date Appellant did any work in the victim's home.[46] Appellant argued that the evidence was insufficient to support the conviction of home improvement fraud because the "Proposal" did not set forth a schedule for the masonry work.[47]

The Superior Court wholly rejected Appellant's argument. First, the Superior Court rebuked Appellant for not including dates in the written "proposal" as this is a violation of the Home Improvement Consumer Protection Act.[48] Second, the Superior Court accepted the victim's testimony that he and Appellant orally agreed to a start date.[49] The Superior Court found the oral agreement

---

[43] *Commonwealth v. Geske,* 2018 WL 3616384, No. 1417 MDA 2017 (Pa. Super. 2018). Non-Precedential Decision used only for persuasive purpose.
[44] *Id.* at 1
[45] *Id.*
[46] *Id.*
[47] *Id.* at 2
[48] *Id.* at 4
[49] *Id.*

18

regarding the start date was sufficient to find that there was a date specified, as required by the Home Improvement Fraud Statute.

We find the facts of the instant case to be materially similar to *Geske*. The estimate provided by Appellant did not include a specific start or end date. There is a notation on the estimate, written by Appellant, "Received $1,000 to start – 9-8-17."[50] Kanellakis believed this was the date that Appellant would start the project. Kanellakis also testified about the end date for the project. When she asked Appellant how long it would take to do the job he told her that it would take two months, but Kanellakis told Appellant that as long as it was done by the end of December she would be happy.[51] Like in *Geske*, we find the oral agreement regarding the start and end date is sufficient to find that there was an agreement for the completion date for the project.

Appellant argues that the intent element has also not been met. The element of intent in home improvement fraud is substantially similar to the intent element of theft by deception. We adopt our reasoning from the above section. We also note that Appellant's intent to defraud Kanellakis can be shown through his constant asking of more money from Kanellakis without purchasing materials or performing labor that would justify the need for more money.

---

[50] Commonwealth's Exhibit 1
[51] N.T., 24

19

As all of the elements of home improvement fraud have been met we find the evidence was sufficient to convict Roncase of this offense.

## Conclusion

In conclusion, the trial court respectfully requests that the Superior Court affirm the trial court's verdict of guilt for the crimes of theft by failure to make required disposition of funds received, theft by deception, and home improvement fraud.

BY THE COURT,

DATED: June 25, 2019          HARRY M. NESS, JUDGE

20