**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2735
_____

RASHAD WILLIAMS, a/k/a Melvin Williams,
Appellant

v.

DELAWARE COUNTY BOARD OF PRISON INSPECTORS; DELAWARE COUNTY
MUNICIPALITY; COMMUNITY EDUCATION CENTERS (C.E.C.) INC.; JAMES
HYMAN, CEO (C.E.C.); MICHAEL HELLRIEGEL, Executive Vice President (C.E.C);
DAVID BYRNE, Warden;  JOHN RILEY, JR., Superintendent; RICHARD LEACH,
Chief of Security; GEOFFREY BALDWIN, C.E.R.T. Sergeant; PHILIP CARTER,
C.E.R.T. Sergeant; JOANNE ABT, Hearing Examiner; GLORIA JENKINS, 10 Unit
Control Officer; ELI HITCHENS, 10 Unit Rover/B Block Correctional Officer; DANA
KEITH, Librarian; BRIAN CONLEY, Mailroom Supervisor; COKLIA DUNN, Chaplain
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-04348)
District Judge:  Honorable Mark A. Kearney
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 14, 2020

Before: KRAUSE, MATEY, and ROTH, Circuit Judges

(Opinion filed: February 3, 2021)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se appellant Rashad Williams, a prisoner in the Pennsylvania correctional system, appeals from an order granting summary judgment to the defendants. For the reasons that follow, we will vacate in part and affirm in part the District Court's judgment.

I.

Williams and another inmate, Terrell Gatling, filed a pro se civil rights complaint under 42 U.S.C. § 1983 in the District Court against Delaware County, the Delaware County Board of Prison Inspectors (the "Prison Board"), Community Education Centers ("CEC"), two CEC executives, and several George W. Hill Correctional Facility officials and employees.[1] The complaint alleged numerous constitutional violations pertaining to the plaintiffs' incarceration at George W. Hill, where Williams was being held in pretrial detention. Gatling did not proceed with the lawsuit. Williams amended his complaint four times, with the fourth amended complaint becoming the operative one.

The defendants filed motions to dismiss Williams' complaint for failure to state a claim. The District Court dismissed the complaint in part, allowing Williams to proceed with four claims against the Prison Parties: (1) a free exercise claim regarding his request

_____

[1] The Prison Board oversees operations at George W. Hill. CEC is a private prison provider that contracts with the Prison Board. The Prison Board, CEC, and the individual defendants associated with CEC and George W. Hill will be referred to in the collective as the "Prison Parties."

to speak with an imam; (2) a claim that he was deprived of meals; (3) a retaliation claim regarding a grievance he filed on September 28, 2015; and (4) a claim for failing to protect him from violent inmates and failing to train employees at George W. Hill. Williams also proceeded with a claim against Delaware County for housing him with violent inmates at George W. Hill and at the Delaware County Courthouse.[2]

After the close of discovery, the remaining defendants moved for summary judgment. The District Court granted Williams two extensions of time to respond to the defendants' motions. Williams did not respond. After the deadline to respond had passed, Williams filed a motion to compel discovery alleging that the defendants had not responded to his discovery requests. On June 27, 2019, the District Court denied Williams' motion and granted summary judgment in favor of the defendants, concluding that Williams had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") with respect to his claims against the Prison Parties, and that his claims against Delaware County lacked merit. Williams timely appealed.

---

[2] Additionally, the District Court dismissed the complaint without prejudice as to three defendants for Williams' failure to serve them. Williams filed two motions for reconsideration of the dismissed claims, which were denied. We will not review these decisions because Williams does not meaningfully challenge them on appeal. See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir.1994) ("An issue is waived unless a party raises it in its opening brief[.]").

3

II.

We have jurisdiction under 28 U.S.C. § 1291.[3] We exercise plenary review of orders granting motions to dismiss. See Lorenz v. CSX Corp., 1 F.3d 1406, 1411 (3d Cir. 1993). To survive dismissal, a complaint must "state a claim to relief that is plausible on its face" by including facts that "permit the court to infer more than the mere possibility of misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). We accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiff. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). We exercise plenary review of the District Court's award of summary judgment. See Gallo v. City of Phila., 161 F.3d 217, 221 (3d Cir. 1998). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). We may affirm on any ground supported by the record. See Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 469 (3d Cir. 2015).

---

[3] The Prison Parties argue that we lack jurisdiction to review the District Court's order granting their motion to dismiss because it was not identified in Williams' notice of appeal. See Delaware Board Br. at 12–15. We disagree. Although Williams' notice of appeal specified only the District Court's June 27, 2019 order granting the defendants' summary judgment motions, it can be "fairly inferred" that he intended to appeal the District Court's earlier decisions addressing the same complaint. Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010); see also Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, 144 (3d Cir. 1998) (explaining that we may exercise appellate jurisdiction over "orders that are not specified in the notice of appeal where: (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues").

III.

First, Williams argues that the District Court erred in granting the Prison Parties' motion to dismiss for failure to state a claim that he was handcuffed during out-of-cell activities and placed in the restrictive housing unit ("RHU") without a hearing in violation of George W. Hill policy and his due process rights. In his complaint, Williams alleged that, on September 16, 2015, he received a misconduct report for starting a fight and was placed on pre-disciplinary detention. He was scheduled for a misconduct hearing to take place on September 22 or September 23, but the hearing was cancelled. On September 23, he was handcuffed during out-of-cell activities. Williams was then placed in the RHU from September 25, 2015, to October 20, 2015. He was returned to the RHU for about a week in the beginning of November 2015.

The District Court determined that Williams' claim about the cancelled hearing was time-barred based on the date his complaint was deemed filed on the District Court docket (September 28, 2017) and the applicable two-year statute of limitations. Williams argues that the claim was timely according to the mailbox rule. We agree. His amended complaint should have been deemed filed on the date that he certified that he relinquished it to prison officials for mailing, which is September 22, 2017, rather than the date that the complaint was docketed in the District Court. See Houston v. Lack, 487 U.S. 266, 276 (1998). Thus, his claim about being denied a misconduct hearing on September 22 or 23, 2015, was not time-barred. See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (noting that the Pennsylvania statute of limitations for a § 1983 claim is two years).

5

Moreover, it is not clear that Williams failed to state a claim. While "pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [restrictive housing] without explanation or review of their confinement." Bistrian v. Levi, 696 F.3d 352, 375 (3d Cir. 2012) (quoting Stevenson v. Carroll, 495 F.3d 62, 69 (3d Cir. 2007)) abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020). "Prison officials must provide detainees who are transferred into more restrictive housing . . . an explanation of the reason for their transfer as well as an opportunity to respond." Stevenson, 495 F.3d at 70. When detainees are moved into more restrictive housing for disciplinary (as opposed to "purely administrative") reasons, greater process is required. Id.; see also Williamson v. Stirling, 912 F.3d 154, 175 (4th Cir. 2018) ("If the restriction imposed by jail officials is a disciplinary one—arising from a pretrial detainee's misconduct in custody—the detainee is entitled to notice of the alleged misconduct, a hearing, and a written explanation of the resulting decision.").

The District Court addressed Williams' procedural due process claim regarding the restrictions imposed upon him from September 28, 2015, onward, and concluded that he had failed to allege that he was denied an explanation or review. But although Williams admitted in his complaint that he was provided with an explanation for his transfer to the RHU, he claimed that he was denied a hearing—raising, at least, an inference that Williams was not provided any opportunity to respond to the imposed restriction. While it is possible that Williams was, in fact, afforded adequate process, see

6

Mathews v. Eldridge, 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands."), the District Court did not address his claim that he was denied a hearing or the alleged reasons for his segregation.[4]  Accordingly, as in Bistrian, "we ask the Court to consider the issue in the first instance by 'examin[ing] the asserted purposes for [Williams'] detention, and determin[ing] whether sufficient process has been afforded.'"  696 F.3d at 375.[5]

IV.

Williams also raises several issues regarding the District Court's summary judgment ruling.  We note, as a threshold matter, that Williams provided no response to the defendants' summary judgment motions, which left the District Court free to treat the defendants' factual assertions as undisputed.  See Fed. R. Civ. P. 56(e).[6]

---

[4] Nor did the Prison Parties.  Rather, they moved to dismiss Williams' claim on the basis that he had failed to name the individual responsible for cancelling the hearing.  However, Williams alleged that he was "denied a misconduct hearing as stated in the pre-dated notice by hearing examiner Sergeant Joanne Abt and Chief of Security Richard Leach."  Complaint, ECF No. 88 at 6.  He also identified Leach as the person who restrained him during out-of-cell activities and who ordered his transfer to the RHU.

[5] To the extent that Williams argues that he was entitled to additional or separate process for being handcuffed during out-of-cell activities, we leave that to the District Court to address in the first instance.

[6] In his untimely motion to compel discovery, Williams claimed that the defendants never responded to his interrogatories or requests for various documents, and instead sent him "unnecessary" documents that he did not request.  See ECF No. 166 at 3.  While a district court should not grant a defense motion for summary judgment unless "the plaintiff has had a full opportunity to conduct discovery," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986), Williams had over three months to do so.  During that time, he failed to alert the District Court as to any issue related to the discovery process.  Moreover, the

7

First, Williams argues that the District Court erred in determining that he had failed to exhaust administrative remedies as to his four claims against the Prison Parties that survived initial dismissal.[7] We disagree. The PLRA requires a prisoner to exhaust available administrative remedies before bringing an action regarding prison conditions. 42 U.S.C. § 1997e(a); Small v. Camden Cnty., 728 F.3d 265, 268 (3d Cir. 2013).[8] Under § 1997e(a), a prisoner must properly exhaust such remedies by complying with the prison grievance system's procedural rules. Woodford v. Ngo, 548 U.S. 81, 93–95 (2006); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004). The George W. Hill handbook requires inmates to both submit a grievance form and make an appeal within seven days of receiving a response. See ECF No. 157-2 at 61.

---

District Court correctly observed that Williams "fail[ed] to show the specific discovery which he claim[ed was] not produced would aid his arguments in opposition to summary judgment." Order, ECF No. 169.

[7] Our conclusion as to Williams' failure to exhaust these four claims against the Prison Parties has no bearing on his procedural due process claim addressed in Section III above, which was dismissed on the pleadings, and which we ask the District Court to reconsider on remand. In their motion to dismiss, the Prison Parties did not argue that Williams' procedural due process claim was unexhausted. Because failure to exhaust is an affirmative defense for the defendants to plead and prove, Williams was not required to plead or demonstrate exhaustion in his complaint to state a claim. See Jones v. Bock, 549 U.S. 199, 216 (2007).

[8] Pretrial detainees are "prisoners" for purposes of the PLRA. See 28 U.S.C. § 1915(h), (defining "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program"); Kalinowski v. Bond, 358 F.3d 978, 979 (7th Cir. 2004) ("Pretrial detainees are 'prisoners' for purposes of the PLRA because they are in custody while 'accused of . . . violations of criminal law'.").

During his deposition, Williams admitted that he did not file a grievance for his free exercise claim or appeal the grievances he alleged to have filed for his deprivation of meals claims. See Dep. 60–64, 67, 236–37, ECF No. 154-2.[9] Williams did not respond to or otherwise contradict the defendants' allegations that he failed to file grievances for his retaliation claims, as well as his failure to protect and train claims against the Prison Board and CEC.[10] Accordingly, the District Court's grant of summary judgment was proper as to these claims.

Second, Williams argues that the District Court erred in granting summary judgment to Delaware County regarding his claim that the County failed to protect him from violence at George W. Hill and the Delaware County Courthouse. Again, we disagree. When Williams arrived at George W. Hill, he was placed in protective custody. Williams claimed that, despite requiring protection, he was housed with "violent-prone inmates" at George W. Hill and the Delaware County Courthouse. See, e.g., Complaint, ECF No. 88 at 12. Williams defined "violent inmates" as all maximum-security inmates. See Dep., 368, 373, ECF No. 154-2.

---

[9] While Williams alleged to have filed grievances for his deprivation of meals claims, the defendants' uncontroverted record of all of the grievances Williams filed while at George W. Hill did not include such a claim. See Defendants' Appendix, ECF No. 157-2.

[10] Throughout litigation in the District Court and on appeal, Williams has made the general, unsupported claim that he did not appeal his grievances because he never received responses from the prison administration. This assertion is undermined by the record, which includes several grievance responses from George W. Hill officials. Regardless, Williams failed to allege that he ever grieved his retaliation and failure to protect and train claims in the first place.

9

Delaware County argues that it is not liable for claims arising out of events at George W. Hill because it exercises no control over the prison under Pennsylvania law. See Peck v. Del. Cty. Bd. of Prison Inspectors, 814 A.2d 185, 190–91 (Pa. 2002) (determining that Delaware County and the Prison Board are separate legal entities). Rather, the Prison Board controls the administration of George W. Hill. See 61 Pa. Cons. Stat. § 1731 (explaining that the Prison Board "shall provide for the safekeeping, discipline and employment of inmates and the government and management of the correctional institution"). Williams argues that the County "delegates its power [to the Prison Board] to establish[] final employment, policies with respect to the discipline of [CEC] personnel." Williams Br. at 22. However, he provides no support for this claim.

Besides, the undisputed evidence does not support Williams' claims that he suffered a constitutional violation at either George W. Hill or the Delaware County Courthouse. His allegations that he was housed on the same block as maximum-security inmates and escorted through spaces occupied by them at George W. Hill are too speculative to make out a failure-to-protect claim, as is his allegation that he was housed in the same cell with maximum-security inmates, including a "super max" prisoner, at the Delaware County Courthouse. See Dep. 379, ECF No. 154-2. In Bistrian, a pretrial detainee alleged that prison officials were deliberately indifferent to a substantial risk of serious harm when they placed him in a locked recreation pen with two inmates with known histories of violent assaults against other inmates. 696 F.3d at 370–71. We held that, while Bistrian stated a failure-to-protect claim regarding an inmate who he knew and

10

who had threatened him for his cooperation with prison officials as an informant, he failed to state a claim regarding another inmate who he had no personal relationship with and who had no connection to his informant work. Id. We concluded that the risk that "an inmate with a history of violence might attack another inmate for an unknown reason" was too speculative to state a claim of deliberate indifference by prison officials. Id. at 371. Williams' allegations are even more general and speculative than that which we determined failed to state a claim in Bistrian. Additionally, Williams failed to identify a relevant Delaware County policy or custom that would render it liable. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–92 (1978) (ruling that a local government can be liable under § 1983 only when its policy or custom caused a constitutional violation).

Accordingly, we will vacate the District Court's judgment with respect to Williams' claim that his detention in the RHU without a hearing violated his right to procedural due process, and we will remand for further consideration of that claim. We will otherwise affirm the judgment of the District Court. Williams' motion for appointment of counsel is denied, see Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993), without prejudice to renewal of his request for counsel in the District Court on remand..